**DAY PITNEY** LLP

BOSTON    CONNECTICUT    NEW JERSEY    NEW YORK    WASHINGTON, DC

**MICHAEL T. BISSINGER**
Attorney at Law

One Jefferson Road
Parsippany, NJ 07054

T: (973) 966 8036  F: (973) 206 6081
mbissinger@daypitney.com

July 31, 2017

**VIA ECF**

The Honorable Vernon S. Broderick, U.S.D.J.
United States District Court, Southern District of New York
40 Foley Square, Room 415
New York, NY 10007

    Re:    Ray et al v. 1650 Broadway Associates Inc. et al.
             Civil Action No. 1:16-cv-09858-VSB

Dear Judge Broderick:

    This Firm represents Defendants 1650 Broadway Associates, Inc. d/b/a Ellen's Stardust Diner ("Stardust") and Kenneth Sturm ("Defendants"). Defendants submit this letter in response to plaintiffs' letter dated July 26, 2017 (Docket No. 122) to request a pre-motion conference for: (i) motion for opt-in notice; (ii) motion for leave to file Amended Complaint and; (iii) motion for injunctive relief. In addition, Defendants seek a ruling from the Court to allow for discovery from a reasonable percentage of the purported collective/class plaintiffs consistent with well-established law.

    A.    Motion for Opt-in Notice

    Plaintiffs' request to proceed with a motion for conditional class certification is premature and should be denied because plaintiffs have not established the required threshold: that the potential class members are "similarly situated." *Prizmic v. Armour, Inc.*, 2006 WL 1662614 at *2 (E.D.N.Y. June 12, 2006). Although the plaintiffs' burden at this first step is modest, "mere allegations in the complaint are not sufficient. . . ." *Id.; Sanchez v. JMPVentures, LLC*, 2014 WL 465542 at *1 (S.D.N.Y. Jan. 27, 2014) (stating plaintiffs' burden "is not non-existent – certification is not automatic"). Rather, plaintiffs must "offer substantial allegations demonstrating a factual nexus between the plaintiff and the potential opt-in plaintiffs." *Morris v. Lettire Const. Corp.*, 896 F.Supp.2d 265, 269 (S.D.N.Y. 2012) (internal quotations and citation omitted). The crux of whether the plaintiffs and opt-in plaintiffs are "similarly situated" turns on whether plaintiffs can demonstrate that they were all "victims of a common policy or plan that violated the law." *Yap v. Mooncake Foods, Inc.*, 146 F.Supp.3d 552, 560 (S.D.N.Y. 2015). The allegations in plaintiffs' Amended Complaint do not meet this burden.

    Plaintiffs' claims fall generally into four categories: 1) an allegation of the inclusion of two types of ineligible employees (bartenders and sweet shop employees) in a tip-pool; 2)

**DAY PITNEY LLP**

The Honorable Vernon S. Broderick, U.S.D.J.
July 31, 2017
Page 2

alleged retention of gratuities related to Stardust's party packages; 3) alleged rounding of plaintiffs' hours and making false payroll entries resulting in an underpayment of wages and; 4) allegedly "shaving" or reducing hours worked to avoid paying overtime. There are no allegations in the Amended Complaint which demonstrate "some factual nexus which binds the named plaintiffs and potential class members together as victims." *Zheng v. Good Fortune Supermarket Group (USA), Inc.*, 2013 WL 5132023 at *4 (E.D.N.Y. Sept. 12, 2013). In *Zheng*, the Court denied plaintiff's motion for conditional certification on the basis that the facts alleged were insufficient to "conclude that plaintiff is similarly situated to other . . . on the basis of the conclusory and unsubstantiated statements in her declaration and complaint." *Id.* at *6.

Likewise, the allegations here are completely devoid of any facts that demonstrate the plaintiffs and opt-in plaintiffs are "similarly situated." For instance, there are no allegation that the potential opt-in plaintiffs (or even the named plaintiffs) actually gave any sweet shop employees part of their "tips." The allegation that Defendants "required" servers to share some portion of their tips with sweet shop employees is denied, and this issue must be explored through discovery and individualized assessments. Likewise, there are no facts alleged that the four named plaintiffs have any knowledge of whether or not the hours of *other* Stardust server's were "reduced" and/or they were not paid for all hours worked. That allegation is also denied, and must be explored through discovery.

"The notice and opt-in process outlined by the FLSA is not a discovery device to determine whether conditional certification is appropriate. More is required under the law, even at the first stage of the conditional certification process." *Boice v. M+W U.S., Inc.*, 130 F.Supp.3d 677, 697-98 (N.D.N.Y. 2015) (internal citation and quotations omitted). Plaintiffs have not provided any detail about how or when they learned facts that make them similarly situated to potential opt-in plaintiffs, "which is critical in order for the Court to determine the appropriate scope of the proposed class and notice process." *Sanchez v. JMPVentures, LLC*, 2014 WL 465542 at *2. Accordingly, discovery must proceed on the plaintiffs' causes of action before any decision on conditional certification can be made because plaintiffs have only set forth "a list of generalized allegations" that are "precisely the kind of unsupported assertions and conclusory allegations that courts in this District have found to be insufficient to certify a class under § 216(b)." *Id.* For these reasons, plaintiffs' request to file a motion for conditional certification at this stage should be denied.

B.  <u>Motion for Leave to File Amended Complaint</u>

Plaintiffs' request to file an Amended Complaint for retaliation due to Defendants' Counterclaim/Third-Party Complaint ("Counterclaim") is frivolous.

First, plaintiffs argue that naming of 13 (plaintiffs erroneously indicate 12) former Stardust employees as "Third-Party Defendants" is in violation of *Fed.R.Civ.P.* 14, and, therefore, is somehow "retaliation." Plaintiffs are wrong and misrepresent the facts to the Court. Stardust is not, as plaintiffs' suggest, seeking to hold these 13 former servers liable for "contribution or indemnification" due to an alleged FLSA violation. The 13 Third-Party Defendants stole money from Stardust and Stardust is suing them for that theft. They are ***named***

**DAY PITNEY LLP**

The Honorable Vernon S. Broderick, U.S.D.J.
July 31, 2017
Page 3

***as Counterclaim Defendants and Third-Party Defendants*** due to the peculiar procedural posture of this litigation. They have not yet opted in to the FLSA collective action and the law is crystal clear that "in a collective action, only plaintiffs who affirmatively opt in can benefit from the judgment or be bound by it, whereas in a class action potential class members are parties to the suit unless they affirmatively opt *out*." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161 (S.D.N.Y. 2008) (emphasis in original). Thus, these 13 former servers are identified as potential Third-Party Defendants in the Counterclaim in the event that the Rule 23 class is not "certified" and they never become part of the class or collective action. This is not, as plaintiffs suggest, a lawsuit for indemnification against unrelated third parties and, therefore, the Counterclaim as pled is not in violation of Rule 14. Most importantly, there is no proffered factual basis to twist this pleading dispute into a "retaliation" claim.

Second, plaintiff's argument that Stardust's Counterclaim under the under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4), (a)(5)(A)-(C) and (b) is somehow "retaliation" is equally meritless. First and foremost, this counterclaim is just ***one*** of several different legal claims that Stardust has filed against the servers who stole hundreds of thousands of dollars from Stardust. The fact that plaintiffs argue whether this one claim is legally viable does not *ipso facto* constitute grounds for a retaliation claim.

Moreover, the CFAA claim is a viable cause of action. Section 1030(a)(4) of CFAA imposes liability on a party who "knowingly and with intent to defraud, accesses a protected computer without authorization or exceeds authorized access…" 18 U.S.C. § 1030(a)(4). Both of these circumstances have been adequately pled. The Counterclaim alleges unauthorized access in those circumstances where employees used an employee identification number or password not assigned to them. (Docket No. 118, Counterclaim, ¶ 123). Under such circumstances, there was no authorized access.

To the extent that the employees had authorization to access the computer system to place orders (¶¶ 71-77, 122-123), the employees exceeded that authority even under the narrow reading of *United States v. Valle*, 807 F.3d 508, 511 (2d Cir. 2015). Even *Valle* recognizes that authorized access is exceeded "when [the employee] obtains or alters information that he does not have authorization to access for any purpose which is located on a computer that he is otherwise authorized to access." *Id.*; *Obeid v. La Mack,* 2017 WL 1215753, at *7 (S.D.N.Y. Mar. 31, 2017). Plaintiffs also misconstrue *Valle* when advocating that just because plaintiffs had authorization to input customer orders, they had unfettered access to all other potential activities. *Cf. Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 286 (S.D.N.Y. 2016) ("If an employer has given an employee access to the computer and to the relevant files, the employee's subsequent misuse of the information or misappropriation with the intent to compete with his employer is not sufficient to violate the CFAA."); *see, e.g., Sageworks, Inc. v. Creatore*, 2017 WL 633359, at *2 (E.D.N.C. Feb. 15, 2017) ("Although plaintiff contends that he had unfettered access to all of plaintiff's computer systems and electronically stored documents

**DAY PITNEY** LLP

The Honorable Vernon S. Broderick, U.S.D.J.
July 31, 2017
Page 4

without limitation, such is an issue of fact better determined on summary judgment than at the pleading stage.").

Moreover, unlike *Valle*, which involved the accessing of ***information***, here the employees physically ***altered data*** within the protected computers. These circumstances fall within § 1030(e)(6) which defines "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6); *see, e.g., Schaeffer v. Kessler,* 2013 WL 1155587, at *5 (S.D.N.Y. Mar. 20, 2013) (unauthorized deletion of files). Furthermore, *Valle* concerns claims under §(a)(4). Here, the Counterclaim alleges additional claims under §5(A) for knowingly causing the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causing damage without authorization, to a protected computer. In short, the claims and circumstances of *Valle* are different than the claims and facts alleged here, and these issued need to be vetted in discovery and, irrespective of the final legal determination of this issue, there is no basis for alleging that this one cause of action qualifies as "retaliation."

Finally, plaintiffs' argue that the "timing" of the Counterclaim is grounds for a retaliation claim. This argument is equally frivolous, and just ignores the litigation's procedural history:

- As detailed in Stardust's Counterclaim, in July 2016, Stardust initiated an internal investigation into theft at the diner after it received information from a server that servers were stealing money. (*See* Counterclaim at ¶ 71). Stardust terminated 31 servers for theft in September 2016 and January 2017 as a result of that investigation.

- In the interim, in an act of retaliation for the terminations, on December 21, 2016, plaintiffs' filed the instant litigation. (See Docket No. 1).

- After the Court granted an extension of time for Defendants to respond to plaintiffs' Complaint, on February 22, 2017, Defendants requested a pre-motion conference to file a motion to dismiss. (Docket No. 97).

- The Court scheduled the conference for April 28, 2017. (Docket No. 100). Thereafter, plaintiffs filed an Amended Complaint and the Court set June 30, 2017, as the deadline for Defendants' responsive pleading. (Docket No. 107)

- Stardust filed its Answer and Counterclaim by the Court-Ordered deadline. (Docket No. 116).

Thus, Stardust filed its Counterclaim at the first instance it could be filed pursuant to this Court's Order, and plaintiffs' argument that this "timing" constitutes retaliation is meritless.

### C. Motion for Injunctive Relief

Contrary to plaintiffs' claims, and as demonstrated above and in the Counterclaim itself, Stardust's request for relief due to the theft of nearly $400,000 is not a baseless claim, nor is it a misuse of the court system to intimidate former employees, and there is no basis whatsoever for injunctive relief. Injunctive relief "is one of the most drastic tools in the arsenal of judicial remedies." *Fed. Ins. Co. v. Metro. Tran. Auth.*, 2017 WL 29229471 at *1 (S.D.N.Y. July 10, 2017). In the Second Circuit, it is "axiomatic that a party seeking a preliminary injunction must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly towards the party requesting the preliminary relief." *Id.* The moving party must show that the "injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable to being fully remedied by money damages." *Id.* (internal citation and quotation omitted).

Here, plaintiffs cannot demonstrate irreparable harm, nor can they show a likelihood of success on the merits. Rather, the Counterclaim sets forth a detailed scheme of unlawful fraud and theft. In fact, plaintiffs do not dispute the appropriateness of the Counterclaim itself (assuming, as the Court must at this stage, that the facts alleged are true). Rather, they argue, based upon the three frivolous theories above, that the Counterclaim is retaliatory and that this somehow forms the basis for injunctive relief. In other words, plaintiffs seek to bar Stardust from asserting any legal claims irrespective of the merits of those claims. This request should be summarily rejected.

### D. Discovery Issues for Resolution at Pre-Motion Conference

Defendants request that the scope of discovery be included on the agenda for the pre-motion conference. With regard to the Amended Complaint, there are four named plaintiffs, 88 opt-in plaintiffs (to date), and several hundred potential opt-in/class plaintiffs. The parties have briefly discussed the scope of discovery in the Case Management Plan and Scheduling Order (Docket No. 119), but have not been able to come to an agreement. Plaintiffs want to limit all discovery to just the four named plaintiffs. Defendants' seek to take discovery from the four named plaintiffs, and approximately 10% of the potential class/opt-ins. This is a reasonable request, and consistent with the representative case law. *See Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 193 (S.D.N.Y. 2014) (holding discovery from 10% of the opt-in plaintiffs to be "acceptable for representative discovery" in FLSA class action); *Morangelli v. Chemed Corp.*, 922 f.Supp.2d 278, 283 (E.D.N.Y. 2013) (permitting representational discovery of 9% of class of 432 opt-in plaintiffs); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013) (authorizing written discovery of 10% of class of 572); *Scott v. Bimbo Bakeries USA, Inc.*, 2012 WL 6151734 at *6 (E.D.Pa Dec. 11, 2012) (approving discovery as to 10% of class of approximately 650 opt-in plaintiffs). Finally, given the Counterclaims, there will need to be discovery on the issues involving the Counterclaim Defendants/Third Party Defendants.

**DAY PITNEY** LLP

The Honorable Vernon S. Broderick, U.S.D.J.
July 31, 2017
Page 6

                                                                                           Respectfully submitted,

                                                                                           /s/MICHAEL T. BISSINGER

                                                                                           Michael T. Bissinger
                                                                                           *Pro Hac Vice*

cc:     Roger Joel Bernstein, Esq. (via ECF and first class mail)
          Thomas John Lamadrid, Esq. (via ECF and first class mail)
          Benjamin Nathan Dictor, Esq. (via ECF and first class mail)

97726075.1