# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN RAY, BRIAN ESPOSITO, SAMUEL LADD and JENNA MILLER, on behalf of themselves and all others similarly situated,<br><br>                                        Plaintiffs,<br><br>        -against-<br><br>1650 BROADWAY ASSOCIATES INC. d/b/a ELLEN'S STARDUST DINER and KENNETH STURM, jointly and severally,<br><br>                                        Defendants. | Civil Action No. 16-cv-9858 (VSB) |

## FINAL SETTLEMENT AGREEMENT AND MUTUAL RELEASES

This Final Settlement Agreement and Mutual Releases (the "Agreement") is entered into by and between Plaintiffs Kevin Ray, Brian Esposito, Samuel Ladd and Jenna Miller (collectively, "Plaintiffs"), on behalf of themselves and on behalf of classes of individuals they seek to represent in the above-captioned matter and 1650 Broadway Associates Inc. d/b/a Ellen's Stardust Diner (the "Restaurant") and Kenneth Sturm (together with the Company, "Defendants") (Plaintiffs and Defendants collectively, the "Parties").

## RECITALS AND BACKGROUND

**WHEREAS**, a Collective and Class Action Complaint was filed on December 21, 2016, in which claims were asserted against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL") for the alleged failure to pay certain wage, overtime and other monies to Plaintiffs and all other employees who are allegedly similarly situated; and

**WHEREAS**, Defendants filed a Counterclaim on June 30, 2017, alleging various claims stemming from alleged theft of monies by certain named Plaintiffs and by certain additional Collective and Class Action Plaintiffs identified as part of the collective and/or class action claims; and

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all Released Claims between named Plaintiffs/Collective and Class Action Plaintiffs, and the Defendants, including, all claims and counterclaims asserted in *Ray, et al. v. 1650 Broadway Associates Inc., et al.* No. 16 Civ. 9858 (the "Litigation"); and

**WHEREAS**, the Parties have engaged in substantial discovery, including but not limited to reviewing voluminous documents exchanged by the Parties, including time, payroll, and other personnel records; and

**WHEREAS**, the Parties participated in in-person and telephonic settlement negotiations, and then attended a private mediation with Mediator Carol Wittenberg on November 9, 2018, during which a settlement was reached in principle; and

**WHEREAS**, the Parties then agreed upon and executed a written Memorandum of Understanding documenting the material terms of this settlement; and

**WHEREAS**, Plaintiffs' Counsel have analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiffs and the putative members of the collective and class actions, and based upon Plaintiffs' counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of Plaintiffs and the putative members of the collective and class actions; and

**NOW THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.      **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1     **Agreement.**  "Agreement" means this Final Settlement Agreement and Mutual Release.

1.2     **Acceptance Period.**  "Acceptance Period" means the ninety (90) days that a Class Member has to endorse and cash a Settlement Check after it is mailed.

1.3     **Class Counsel.**  "Class Counsel" shall mean Thomas J. Lamadrid, Esq. and Benjamin N. Dictor, Esq. of Eisner & Dictor, P.C., 39 Broadway, Suite 1540, New York, NY 10006, and Roger J. Bernstein, Attorney at Law, 535 Fifth Avenue, 35th Floor, New York, NY 10017.

1.4     **Class Members.**  "Class Members" shall mean individuals who worked and/or were hired as Servers at 1650 Broadway Associates, Inc., d/b/a Ellen's Stardust Diner, from December 21, 2010, through December 14, 2018, as set forth on the list of Class Members attached hereto as Exhibit A, and are members of the FLSA Collective Class (as defined in Section 1.5 below) or members of the Rule 23 Class (as defined in Section 1.6 below).

1.5     **FLSA Collective Class.** "FLSA Collective Class" shall mean all individuals who have filed a Consent to Become a Party Plaintiff under the FLSA in the Litigation.

1.6     **Rule 23 Class.**  "Rule 23 Class" means all individuals identified in Exhibit A attached hereto, excluding those individuals in Exhibit A who are FLSA Collective Class Members.

1.7     **Court.**  "Court" means the United States District Court for the Southern District of New York, the Honorable Vernon S. Broderick, U.S.D.J., presiding.

1.8     **Days.**  "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.9     **Defendants.** "Defendants" shall mean 1650 Broadway Associates Inc. d/b/a Ellen's Stardust Diner and Kenneth Sturm.

1.10    **Defendants' Counsel.  "**Defendants' Counsel" shall mean Michael T. Bissinger, Esq., Patrick J. McCarthy, Esq., and Gregory S. Tabakman, Esq. of Day Pitney LLP, One Jefferson Road, Parsippany, New Jersey 07054.

1.11    **Effective Date.**  "Effective Date" of the settlement shall mean the last of the following dates: (a) the date thirty (30) days after the entry of a Final Approval Order (as defined below in Section 1.13) if there are no appeals; or (b) if there is an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval.

1.12    **Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval of this Agreement.

1.13    **Final Approval Order.**  "Final Approval Order" means an Order entered by the Court after the Fairness Hearing, approving the settlement of the Litigation on the terms and conditions of this Agreement.

1.14    **Litigation.**  "Litigation" means the above-captioned case.

1.15    **Named Plaintiffs.**  "Named Plaintiffs" mean Kevin Ray, Brian Esposito, Samuel Ladd and Jenna Miller.

1.16    **Net Settlement Fund.**  "Net Settlement Fund" means the remainder of the Qualified Settlement Fund (as defined below in Section 1.23) after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Awards to Named Plaintiffs in return for a general release.

1.17    **Notice or Notices.**  "Notice" or "Notices" means the Court–approved Notices of Proposed Settlement of Class Action and of Collective Action Lawsuit.

**1.18**   **Objector.**  "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of the settlement contemplated by this Agreement.

**1.19**   **FLSA Collective Action Plaintiffs.** "FLSA Collective Action Plaintiffs" mean those plaintiffs who have filed a Consent to Become a Party Plaintiff with the Court.

**1.20**   **Opt-out Statement.**  "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out of this settlement and not be included under the terms of this Agreement.

**1.21**   **Participating Class Members.**  "Participating Class Members" are all Class Members who do not submit a valid Opt-out Statement.

**1.22**   **Preliminary Approval Order.**  "Preliminary Approval Order" means an Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

**1.23**   **Qualified Settlement Fund or QSF.**  "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendants.  The QSF will be administered by the Settlement Claims Administrator in conformity with the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.  Interest, if any, earned on the QSF will become part of the Net Settlement Fund.  The Parties and the Settlement Administrator shall elect to treat the Settlement Account as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR § 1.468B-1(j)(2)(i), and such election statement shall be attached to the appropriate returns as required by 26 CFR § 1.468B-1(j)(2)(ii).

**1.24**   **Released Claims.**  "Released Claims" means all claims asserted, or wage and hour claims that could have been asserted, under federal, state or local laws by and on behalf of the Class Members in the Litigation.  The Released Claims include all claims under federal, state or local laws for unpaid regular or overtime wages, any related wage and hour claims, all claims for gratuities, all claims for penalties under the NYLL including, but not limited to, §195, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims through the date of the Preliminary Approval Order.

**1.25**   **Relevant Statutory Period.**  The "Relevant Statutory Period" refers to the period from December 21, 2010 through the date of the Order Granting Final Approval.

**1.26**   **Settlement Claims Administrator.** The "Settlement Claims Administrator" will be Rust Consulting, who was selected by the Parties, subject to approval by the Court, to mail the Notices and administer the calculation, allocation, and distribution of the QSF, though the parties reserve the right to select a different Settlement Claims Administrator upon joint consent.

**1.27**   **Settlement Amount.**  "Settlement Amount" means One Million Four Hundred Fifty Thousand Dollars and Zero Cents ($1,450,000.00), which is the maximum amount Defendants will pay to settle the Litigation as set forth in this Agreement, except that Defendants' obligation to pay the employer portion of payroll taxes is separate and apart from and additional to the Settlement Amount.

**1.28**   **Settlement Checks.**  "Settlement Checks" means the two sets of checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

## 2.   INITIAL PROCEDURAL ISSUES

**2.1**   **Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the Litigation.

**2.2**   **Retention and Responsibilities of the Settlement Claims Administrator.**  The Settlement Claims Administrator will be responsible for mailing Notices to Class Members in accordance with the Court's Preliminary Approval Order, distributing Service Awards, calculating the Settlement Checks in accordance with the Court's Final Approval Order, the claims administration process, distribution of the Settlement Checks to Class Members, and providing copies of the cashed Settlement Checks (front and back) signed by the Class Members to Defendants' Counsel.

(A)   The parties will have equal access to the Settlement Claims Administrator, and the Settlement Claims Administrator will provide regular reports to the parties, but no less frequently than every two (2) weeks, regarding the status of the mailing of the Notices to Class Members, the claims administration process, the identity and number of Class Members who object to or opt-out of the Settlement, and the distribution and redemption of the Settlement Checks.

(B)   Defendants agree to reasonably cooperate with the Settlement Claims Administrator and to provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members.

**2.3**   **Preliminary Approval Motion.**

(A)   Following the Parties' execution of this Agreement, Plaintiffs' counsel will submit to Defendants' Counsel a draft Motion for Preliminary Settlement Approval (the "Motion") memorandum of law, and allow Defendants a reasonable opportunity to review the terms of the Motion to ensure that it is consistent with this Agreement.  Plaintiff's Counsel shall also draft and provide to Defendants' counsel: (1) a Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing; and (2) a proposed Order conditionally certifying for purposes of settlement the Rule 23 Class under Fed. R. Civ. P. 23 and preliminarily approving the settlement.  Defendants shall have a reasonable period before the filing deadline to review and provide comments on these papers.

(B)     Once the parties have commented on and finalized the Preliminary Approval Motion, Class Counsel will file same with the Court.  The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of this Agreement or provide objections to this Agreement, which date shall be sixty (60) days from the mailing of Notice to the Class Members, and for a Fairness Hearing for Final Approval of the settlement before the Court.

(C)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things, seek to: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Mutual Release, as described herein; (3) dismiss the Litigation, including all Counterclaims asserted by Defendants, with prejudice; (4) award Class Counsel fees and costs;  (5) award Service Awards to the Named Plaintiffs; and (6) provide for continuing jurisdiction to enforce the terms of this Agreement until final payment has been made and all of the Settlement Amounts have been distributed.

(D)     The Parties expect that the Preliminary Approval Motion will not be opposed, but Defendants may respond to the Preliminary Motion to ensure that it is consistent with the terms of this Agreement.  Any responsive papers will be due seven (7) days after Plaintiffs file the Preliminary Approval Motion.

(E)     If the Court denies the Preliminary Approval Motion, and unless the parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, or unless an appeal is filed, the Litigation will resume as if no settlement had been attempted.  Defendants retain the right to contest whether the Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted in the Litigation if the Preliminary Approval Motion is denied.

(F)     The parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4     Notice to Class Members**

(A)     Within thirty (30) days of the Court's entry of the Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information: name, social security number, last known address and dates of employment within the Relevant Statutory Period, to the extent that information exists on file with Defendants.  All information provided regarding Class Members will be provided to Class Counsel, except for Class Members' social security numbers.

(B)     Within thirty (30) days of Defendants' provision of the information set forth in Section 2.4(A) to the Settlement Claims Administrator, the Settlement Claims Administrator will mail to all Class Members, via First Class United States Mail,

postage prepaid, the Court–approved Notices of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing in the form appended hereto as Exhibit A.

(C)     The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt one re-mailing.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5     Class Member Opt-outs.**

(A)     Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and states, "I opt out of the Stardust wage and hour settlement" ("Opt-out Statement").  To be effective, an Opt-out Statement must be postmarked within sixty (60) days after the Settlement Claims Administrator mails the Notice.  Any Class Member who submits a timely and valid Opt-out Statement shall not (i) be bound by any orders or judgments entered in this Class Action Litigation; (ii) be entitled to benefits or relief under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to object to the Settlement or appeal from or challenge any order of the Court.

(B)     The end of the time period to mail an Opt-out Statement ("Opt-out Period") shall be sixty (60) days after the day on which the Settlement Claims Administrator mails a Notice to a Class Member.  Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable, will be allowed a second twenty-one (21) day period to opt-out from the date of the second mailing, or the original sixty (60) day deadline, whichever date is later.  The Settlement Claims Administrator will not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than sixty (60) days after the first mailing to the Class Member.

(C)     The Settlement Claims Administrator will, within ten (10) days after the last day on which it mails the last Notice to any Class Member, notify Class Counsel and Defendants' Counsel in writing by email and by overnight delivery of the precise date of the end of the Opt-out Period.

(D)     The Settlement Claims Administrator will stamp the postmark date (or date of receipt if there is no visible postmark) on the original of each Opt-out Statement that it receives and shall serve copies of each stamped Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt

thereof.  The Settlement Claims Administrator will also, within three (3) days of the end of the Opt-out Period, file with the Clerk of Court, copies of any stamped Opt-out Statements.  The Settlement Claims Administrator will, within 24 hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, and will be issued a Settlement Check, which will contain a release of both FLSA and New York Labor Law state law claims, and a consent-to-join the Litigation, as set forth in this Agreement.

**2.6     Objections to Settlement.**

(A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be postmarked within sixty (60) days after the Settlement Claims Administrator mails Notice to such Class Member.  The statement must include all reasons for the objection and any reasons not included in the statement will not be considered.  The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and first class mail no later than three (3) days after receipt thereof.  The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B)     An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time.  No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)     The Notices shall inform Class Members of their rights under Paras. 2.6(D) and 2.6(E), above.

(D)     The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7     Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)     After expiration of the Opt-Out Period, Class Counsel will submit to the Court, subject to Defendants' Counsel's prior approval as to consistency with this Agreement: Motions for Final Approval of Settlement, Payment of Service Awards and Payment of Plaintiffs' Counsel's Legal Fees and a Proposed Order Approving the Settlement and Dismissing the Litigation with prejudice ("Final Approval Order").  Plaintiffs' Counsel shall draft the Final Approval Order for review by Defendants' Counsel.

(B)     At the Fairness Hearing and in the Motion for Final Approval and Dismissal, the parties will request that the Court, among other things: (1) certify the proposed Classes for purposes of settlement; (2) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (3) order the Settlement Claims Administrator to distribute Settlement Checks from the Net Settlement Fund to the Class Members and Service Awards, if any, to be paid to the Named Plaintiffs as described in this Agreement; (4) order the attorneys' fees and costs to be paid to Class Counsel from the QSF; (5) order the dismissal with prejudice of all claims asserted in the Litigation, including  all claims by Plaintiffs and all Counterclaims asserted by Defendants, and the claims of all Class Members who did not opt-out; (6) order entry of Final Judgment in accordance with this Agreement; and (7) retain jurisdiction as necessary for the purpose of filing consent-to–join forms from the Class Members as set forth in their Settlement Checks, and for any other relief under the terms of the Agreement.

(C)     If the Court declines to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(D)     If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.

(E)     If the Court declines to enter a Final Approval Order, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement.  The content of such notice shall be agreed to by the parties and such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notices.  The expense of this mailing shall paid out of the Settlement Amount deposited in the QSF. .

(F)     The Final Approval Order will direct the Settlement Claims Administrator to (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks, (2) retain copies of all of the e cashed Settlement Checks with releases, and (3) provide Defendants' Counsel with the original or copies of the cashed Settlement Checks with releases in accordance with this Agreement and the Court's Final Approval Order.

**2.8     Releases and Consents to Join.**

(A)     A Class Member who does not timely return an Opt-out Statement will be issued a Settlement Check by the Settlement Claims Administrator from the Net Settlement Fund in accordance with the Final Approval Order.

(B)     All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

**"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I release the Defendants 1650 Broadway Associates, Inc. and Kenneth Sturm from any and all wage and hour or retaliation claims under the Fair Labor Standards Act and the New York Labor Law brought or which were or could have been brought in *Ray, et al. v. 1650 Broadway Associates Inc., et al.* No. 16 Civ. 9858.

_____          Dated:_____
Signature

Any modification or amendment of the above-language by the Class Member at Defendants' discretion may not be accepted, and may void the Settlement Check.

(C)     The Settlement Claims Administrator will mail the Settlement Checks in two installments.  The First Installment ("First Installment"), as defined further in Section 3, will be mailed within 10 days after Defendants cause the First Installment to be paid to the Settlement Claims Administrator, which payment shall be made within ten (10) days after the Effective Date as long as the conditions set forth in Section 4.1(D) herein have been satisfied.  The Second Installment ("Second Installment"), as defined further in Section 3, will be mailed within ten (10) days after Defendants cause the Second Installment to be paid to the Settlement Claims Administrator, which payment shall be made six months after Defendants cause the First Installment to be paid, but in any case no later than December 26, 2019, so long as this is at least ten (10) days after the Effective Date.

(D)     Ninety (90) days after the date the First Installment Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants two (2) signed copies of each Settlement Check that has been cashed.  After ninety (90) days from the date the Second Installment Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants two (2) signed copies

of each Settlement Check that has been cashed.  The Settlement Administrator is authorized to issue replacement checks to Class Members certifying that they have lost or never received a settlement check, provided that the Settlement Claims Administrator has been able to stop payment on the lost or non-delivered check.  After one hundred twenty (120) days from the date the Second Installment Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants two (2) signed copies of each replacement Settlement Check that has been cashed.

## 3.   SETTLEMENT TERMS

### 3.1   Settlement Amount.

(A)   Defendants agree to pay a Settlement Amount of up to One Million Four Hundred Fifty Thousand Dollars and Zero Cents ($1,450,000.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs, any fees and costs associated with investing and liquidating the Qualified Settlement Fund, and the Settlement Claims Administrator's fees and costs.  Defendants will not be required to pay more than One Million Four Hundred Fifty Thousand Dollars and Zero Cents ($1,450,000.00) under the terms of this Agreement, except that Defendants' obligation to pay employer taxes arising  from the wage payments provided for herein is not included in the Settlement Amount.

(B)   Defendants shall cause the First Installment of the Settlement Amount, equal to Seven Hundred Twenty-Five Thousand Dollars and Zero Cents ($725,000.00) to be paid to the Settlement Claims Administrator after the Effective Date, and upon expiration of the 30-day period for any party to appeal the final Order of the Court.

(C)   The Settlement Claims Administrator shall deposit the First Installment of the Qualified Settlement Fund entirely into FDIC insured interest bearing accounts and interest from such interest bearing accounts will become part of the Net Settlement Fund and be held by the Settlement Claims Administrator in escrow.

(D)   Defendants shall cause the Second Installment of the Settlement Amount, equal to Seven Hundred Twenty-Five Thousand Dollars and Zero Cents ($725,000.00), to be paid to the Settlement Claims Administrator on the earlier of: (i) six months after Defendants cause the First Installment of the Settlement Amount to be paid; (ii) or December 26, 2019, as long as this date is at least 30 days after final approval of this settlement by the Court.  If an appeal of the final order of the Court is filed, and the appellate court approves the settlement, then the first installment referenced above shall be paid within 30 days after the appellate court's decision, and the second installment shall be paid within 6 months after the payment of the first installment.

(E)     The Settlement Claims Administrator shall deposit the Second Installment of the Qualified Settlement Fund entirely into FDIC insured interest bearing accounts and interest from such interest bearing accounts will become part of the Net Settlement Fund and be held by the Settlement Claims Administrator in escrow.

(F)     Class Members will have ninety (90) days from the date of the mailing of the Settlement Checks to cash their Settlement Checks.  Class Members who lose or do not receive their settlement checks must request a replacement check within ninety (90) days of the check's initial issue date.  All replacement checks shall be valid for thirty (30) days.

(G)     For any Class Member that opts out following Notice, the QSF shall be reduced by an amount equal to the amount that Class Member would have received under the approved distribution plan set forth in Section 3.4(B), and returned by the Settlement Claims Administrator to Defendants.  Such return payments shall be issued to Defendants within one hundred twenty-five (125) days after the initial date of issuance of each of the First and Second Installment payments.

(H)     For any Settlement Check returned to the Settlement Claims Administrator as "Undeliverable," the Settlement Claims Administrator shall apply customary "skip tracing" procedures (a maximum of one skip trace) to locate the relevant Class Members.  At the end of six (6) months after the final distribution of the Settlement Checks, Class Counsel shall advise the Court and Defendants' Counsel as to the number of Class Members that have not received the Notice and/or Settlement Check, or that have received but have not deposited Settlement Checks within the time period set forth in Section 3.1(F).  Within five calendar (5) days, Class Counsel shall propose for the Court's consideration a plan for distribution of any unclaimed amount of the QSF either in an additional distribution to Class Members who have received and deposited a Settlement Check, or to an appropriate non-profit organization.  If Class Counsel fails to advise the Court within the time period herein, or the Court rejects Class Counsel's proposal, the QSF shall be reduced by an amount equal to the amount that the Class Member would have received under the approved distribution plan set forth in Section 3.4(B), and returned by the Settlement Claims Administrator to Defendants.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     At the Fairness Hearing and in the Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than 33 1/3 % of the Settlement Amount, and for reimbursement of their actual litigation costs and expenses to be paid from the QSF.  After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.  The Claims Administrator shall be paid for its services from the fees awarded to Plaintiffs' Counsel.

(B)   The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.  Any fees or costs sought by Class Counsel but not approved by the Court shall be distributed to the Net Settlement Fund.

(C)   The attorneys' fees and costs shall be paid from the QSF in two installments at the time the payments to Participating Class Members are mailed.

**3.3    Service Award to Named Plaintiffs.**

(A)   In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs will apply to the Court to receive no more than Five Thousand Dollars and Zero Cents ($5,000.00) each as Service Awards from the QSF.

(B)   The outcome of the Court's ruling on the application for the Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.  Should all or part of any Service Award sought not be approved by the Court, the sum shall revert to the Net Settlement Fund.

(C)   Named Plaintiffs agree to the general release in Section 4.1(C) in consideration for receipt of the Service Awards, if any, and their respective share of the QSF.

**3.4    Net Settlement Fund and Allocation to Class Members.**

(A)   The allocation to Participating Class Members for Settlement Checks will be made from the remainder of the Qualified Settlement Fund after deductions for: (1) Court-approved attorneys' fees and costs for Class Counsel, from which the Settlement Claims Administrator's fees and costs will be paid; (3) Court-approved Service Awards to Named Plaintiffs; and (4) any fees associated with establishing, investing, or liquidating the Settlement Fund.

(B)   The Net Settlement Fund shall be disbursed to Class Members according to the following formula:

(1)   CATEGORY 1: Unpaid Wages Due to Automatic Time Deductions: The Category 1 Amount shall be 12.7% of the Net Settlement Fund. Each Class Member's share of the Category 1 Amount shall be determined by multiplying the Category 1 Amount by the ratio of his or her total number of shifts that were six and one-half hours or longer to the total number of such shifts of the Class Members in this Category.

(2)   CATEGORY 2: Gratuities Diverted to Sweet Shop Employees: The Category 2 Amount shall be 7.3% of the Net Settlement Fund. Each Class Member's share of the Category 2 Amount shall be determined by computing the sum of (A) and (B):

(A) $3.00 times the ratio of the number of shifts the Class Member worked between January 1, 2013 and December 31, 2015 to by the total number of shifts worked by all Class Members during that period;

(B) $5.00 times the ratio of the number of shifts the Class Member worked between January 1, 2016 and March 15, 2016 to the total number of shifts worked by all Class Members during that period.

(3) CATEGORY 3: Gratuities Diverted from Party Contracts: The Category 3 Amount shall be 11.3% of the Net Settlement Fund.. Each Class Member's share of the Category 3 Amount shall be determined by multiplying the Category 3 Amount by the ratio of the number of weeks he or she worked between December 21, 2010 and December 31, 2017 to the total number of weeks worked by all Class Members between December 21, 2010 and December 31, 2017.

(4) CATEGORY 4: Tip Credits Improperly Claimed: The Category 4 Amount shall be 36% of the Net Settlement Fund. Each Class Member's share of the Category 4 Amount will be determined by multiplying the Category 4 Amount by the ratio of his or her total number of hours worked between December January 1, 2013 and March 15, 2016 to the total number of hours worked by all Class Members between January 1, 2013 and March 15, 2016

(5) CATEGORY 5: Wage Notice and Wage Statement Penalties:  The Category 5 Amount shall be 32.7% of the Net Settlement Fund. Each Class Member's share of the Category 5 Amount shall be determined by multiplying the Category 5 Amount by the ratio of his or her "Combined Wage Notice and Wage Statement Penalty Amount" to the total of the "Combined Wage Notice and Wage Statement Penalty Amounts" for all members of the Class.

For each Class Member the "Combined Wage Notice and Wage Statement Penalty Amount shall be the sum of (A) and (B) below:

(A) The Wage Statement Penalty Amount for each Class Member shall be computed by adding the sum of (i) the number of weeks the Class Member worked between April 9, 2011 and February 27, 2015 multiplied by $100.00, but not to exceed $2,500.00, to the sum of (ii) the number of days the Class Member was employed between February 27, 2015 and December 31, 2016 multiplied by $250.00. If the resulting total is greater than $5,000, the Class Member's Wage Statement Penalty Amount shall be $5,000.00.

(B) The Wage Notice Penalty Amount for each Class Member (applicable only to those Class Members hired on or after April 9, 2011) shall be computed by adding the sum of (i) the number of weeks the Class Member was employed between April 9, 2011 and February 27, 2015 multiplied by $100.00, but not to exceed a total of $2,500.00, to the sum of (ii) the number of days the Class Member was employed between February 27, 2015 and December 31, 2016 multiplied by $250.00, not to exceed $5,000.00. If the resulting total is greater than $5,000.00, the Class Member's Wage Notice Penalty Amount shall be $5,000.00.

(C) Defendants will pay the employer's share of taxes in addition to the Net Settlement Fund. Any portion of the taxes on the uncashed checks will revert back to Defendants.

(D) Defendants and the Settlement Claims Administrator shall exchange such information as is necessary for the Settlement Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

(E) The Settlement Claims Administrator shall mail to all Class Members their proportionate share of the Net Settlement Fund. The Settlement Claims Administrator shall use reasonable efforts to make an additional mailing to Class Members whose checks are returned because of incorrect addresses. Such efforts shall include using social security numbers to obtain better address information (a maximum of one skip trace).

All payments to Class Members made pursuant to this Agreement shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members, except that W-2 and 1099 forms shall be issued in the year determined by the Settlement Claims Administrator to be applicable. It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Class Member to additional compensation or benefits under any bonus plans, or other compensation or benefit plans or agreements in place at Defendants' business during the Relevant Statutory Period, nor will it

entitle any Class Member to any increased retirement, 403b plan, 401K benefits or matching benefits or deferred compensation benefits.  It is also the intent of this Settlement that the settlement payments provided for in the Stipulation of Settlement are the sole payments to be made by Defendants to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the settlement payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Relevant Statutory Period).

**3.5      Tax Characterization.**

(A)      Settlement Payments to Class Members will be made as follows: 50% of each payment to a Class Member shall be made by a check for wages subject to withholding for applicable employee taxes, and 50% 1099 of each payment to a Class Member shall be made by a check for interest and liquidated damages not subject to withholding for any taxes due from the employee.  Any Service Awards will be considered non-wage income.  All wage payments to Class Members shall be subject to applicable withholding taxes.  Any tax responsibility arising from the non-wage portion of the payments to Class Members shall not be Defendants' responsibility.

(B)      The Settlement Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Class Members, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Class Members.

**3.6      Default Procedure.**

(A)      In the event Defendants fail to timely pay one or both of the two installments described in Section 3.1 above after all other conditions of this Agreement have been met, Class Counsel shall provide written notice to Defendants, through Defendants' Counsel, of the default.  Defendants shall have thirty (30) days from receipt of the written notice to respond and/or cure the default (the "cure period").  After this 30-day period expires, if the parties still disagree whether all terms of this Agreement have been met in order for the two installments described in Section 3.1 to be made, they shall seek a final decision from the Court.  Assuming the Court determines that Defendants are in default on one or both of the installments described in Section 3.1 above, the Court may assess interest at the normal New York State statutory interest rate and enter judgment against Defendants for the unpaid amount plus assessed interest from the date of default until the default is cured.

(B)      If the Court declines to retain jurisdiction after approval of the Final Settlement Agreement, and Defendants fail to timely pay one or both of the two installments described in Section 3.1, the parties shall follow the process described in section 3.6(A) above in a good faith effort to resolve any alleged default or other alleged breach of this Agreement.  If that process does not result in a resolution, the dispute shall be submitted to binding arbitration before Arbitrator Carol Wittenberg.

Defendants will also obtain Affidavits of Confession of Judgment executed by each Defendant for the two payments due under this Agreement, to be held in escrow by Class Counsel.   Those Affidavits of Confession of Judgment may  filed only if a payment remains unpaid more than ten calendar days after Arbitrator Wittenberg determines that defendants are in default and have failed to timely pay one or both of the installments under the terms of this Agreement.

## 4.    RELEASE

### 4.1    Release of Claims.

(A)    By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member who does not timely opt-out pursuant to this Agreement forever and fully releases 1650 Broadway Associates Inc. d/b/a Ellen's Stardust Diner and Kenneth Sturm, as well as their current and former owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsurers, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all wage and hour and retaliation claims asserted in the Litigation, or that could have been asserted in the Litigation, under the Fair Labor Standards Act ("FLSA") and/or the NYLL.  The Released Claims include, but are not limited to, all claims for regular or overtime wages, any related wage and hour claims, all claims for gratuities, NYLL § 195 penalties, all related derivative benefit claims (both ERISA and non-ERISA benefits), the claims of retaliation that Plaintiffs sought to add to their Amended Complaint as set forth in Class Counsel's letter to the Court dated July 26, 2017, interest on such claims, and attorneys' fees and costs related to such claims through the date of the Final Approval Order.

(B)    By operation of the entry of the Judgment and Final Approval, except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he or she may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members.  Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsels' representation in the Litigation.

(C)    In addition to the waiver and release contained in Sections 4.1(A)-(B) above, and in consideration for the payment(s) received under Section 3.1(A) as well as Section 3.3(A), Named Plaintiffs, on behalf of themselves and their heirs, executors, administrators, successors and assigns, voluntarily release and forever discharge Defendants, and any of their current or former owners, subsidiaries, divisions, affiliated entities, agents, officers, principals, trustees, administrators, executors, attorneys, employees, insurers, reinsurers, predecessors, successors and assigns, both individually and in their official capacities (collectively "Releasees") of and

from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of Preliminary Approval Order, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Age Discrimination in Employment Act; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the National Labor Relations Act, 29 U.S.C. § 151 et. seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; the New York City Human Rights Law; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of the Preliminary Approval Order.

(D)   Defendants agree that upon entry of the Final Approval Order, and as further consideration for this settlement, their Counterclaims asserted in the Litigation shall be dismissed, with prejudice, and without the award of costs or fees to either Party. By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, Defendants release and discharge all Class Members from any and all causes of action identified in the Counterclaims.  This mutual release is contingent upon each such person accepting and fulfilling the other terms of the final Order of the Court approving this settlement.

**4.2   Denial of Liability & Publicity.**

(A)   Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation.  Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants,

or as an admission that a class should be certified for any purpose other than settlement purposes.

(B)     The Parties and Class Counsel agree that until the filing of the Motion for Preliminary Approval they will not in any manner publicize the terms of this Agreement, which includes notifying any member of the media regarding the terms and conditions of the settlement and includes posting or disseminating the terms and conditions of the settlement on any social media (including Facebook, Law 360, Eater, Grub Street, or similar media outlets) or Class Counsel's website. Such prohibition extends to dissemination of any information, whether oral, electronic, or in any document form including but not limited to providing copies of this Agreement or providing information regarding the terms of the Agreement before the Motion for Preliminary Approval is filed.

## 5.     INTERPRETATION AND ENFORCEMENT

5.1     **Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2     **No Assignment.**  Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.3     **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

5.4     **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5     **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length, including participating in a full-day private mediation session.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6     **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of

this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8    Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.9    Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10    Continuing Jurisdiction.**  The Court shall retain jurisdiction over the implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

**5.11    Waivers, etc. to be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12    When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13    Signatures of Named Plaintiffs.**  This Agreement is valid and binding if signed by the Individual Defendant, the Restaurant's authorized representatives and by the Named Plaintiffs.

**5.14    Facsimile and Email Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFFS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH**

**THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

**I AGREE TO THESE TERMS.**

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

10/14/19

_____
Date

KEVIN RAY

By: _____
Kevin Ray

_____
Date

BRIAN ESPOSITO

By: _____
Brian Esposito

_____
Date

SAMUEL LADD

By: _____
Samuel Ladd

_____
Date

JENNA MILLER

By: _____
Jenna Miller

1650 BROADWAY ASSOCIATES INC.

21

**THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

**I AGREE TO THESE TERMS.**

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

KEVIN RAY

_____     By: _____
Date                             Kevin Ray

BRIAN ESPOSITO

October 14, 2019                By: _____
_____
Date                             Brian Esposito

SAMUEL LADD

_____     By: _____
Date                             Samuel Ladd

JENNA MILLER

_____     By: _____
Date                             Jenna Miller

1650 BROADWAY ASSOCIATES INC.

**THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

**I AGREE TO THESE TERMS.**

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

KEVIN RAY

_____     By: _____
Date                                            Kevin Ray

BRIAN ESPOSITO

_____     By: _____
Date                                            Brian Esposito

SAMUEL LADD

November 5, 2019
_____     By: _____
Date                                            Samuel Ladd

JENNA MILLER

_____     By: _____
Date                                            Jenna Miller

1650 BROADWAY ASSOCIATES INC.

21

**THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

**I AGREE TO THESE TERMS.**

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

KEVIN RAY

_____     By: _____
Date                                       Kevin Ray

BRIAN ESPOSITO

_____     By: _____
Date                                       Brian Esposito

SAMUEL LADD

_____     By: _____
Date                                       Samuel Ladd

JENNA MILLER

11/5/19
_____     By: _____
Date                                       Jenna Miller

1650 BROADWAY ASSOCIATES INC.

___10/4/19___
Date

By: _____
Name: _____

KENNETH STURM

___10/1/19___
Date

By: _____
Kenneth Sturm

# EXHIBIT A

| | |
|---|---|
| Abram | Jeremy |
| Abramson | Cheryl C |
| Adamson | Todd |
| Agatte | Jennifer |
| Aiken | Jeffrey |
| Albanese | Christina |
| Angerosa | Lacey E |
| Antalan | Shannon |
| Apicella | Anthony |
| Apicella | Andew |
| Arielzerby | Breanna |
| Austin | Lindsey |
| Ayars | Emma A |
| Azazi | Zechariah |
| Bailey | Jack |
| Balko | Rachel |
| Barbato | Andrew Bernard |
| Barry | Jennifer |
| Bayern | Melissa |
| Beirne | John P |
| Bentancur | Michael F |
| Berg | Keith |
| Bergum | Jennifer |
| Bogan | Kristine |
| Borroughs | Sean |
| Bradish | Jessica |
| Branthoover | Jamie |
| Brasher | Amanda |
| Brennan | Kayleigh M |
| Brooks | Daniel |
| Bryant | Shatisha |
| Burgmaier | Amy |
| Burke | Abby |
| Burroughs | Sean |
| Burton | Jasmine |
| Calkins | Nicole |
| Cargill | James |
| Carpenter | Marion K |
| Carter | Zachary |
| Castillo | Darilyn |
| Cavalieri | Adam |
| Ciraulo | Brie |
| Claifin | Phillip |
| Cohen | Kevin |
| Colbert | David |

| | |
|---|---|
| Conte | Robert |
| Conver | Jonathan |
| Craven | Molie |
| Cunningham | Michael |
| Daives | Elizabeth |
| Daly | Michael |
| Damarest | Elna Marie |
| Danica | Dora |
| Dansky (Thomas) | Anne Fraser |
| Davis | Stephen T |
| Dawson | Ellis |
| DeAngelis | Matthew |
| Dease | Courtney |
| Debusk | Jana |
| Demers | Max |
| Dennis | Ciera M |
| Dicristo | Christopher |
| Dilley | Chris |
| Disarro | Bianca |
| Doherty | Megan |
| Donnelly | Melanie |
| Dothee | Nick |
| Doyle | Shannen |
| Dunleavy-Yeaton | Vanessa |
| Dwinell | Megan |
| Dwyer | Cristine |
| Ebers | Alexis |
| Echevarria | Joshua |
| Ehlig | Kyle Nathael |
| Ellis | Brandon |
| Englehardt | Eric |
| Ernst | Kristen |
| Esposito | Brian |
| Fazzolari | Vincent |
| Ferguson (Marshal) | Libby |
| Ferko | James |
| Figliozzi | Brett |
| Fleites | Jonathan |
| Forchelli | Jennifer |
| Francesconi | Maria |
| Fridley | Kenton |
| Friedman | Iliana G |
| Fritz | Andrew |
| Fryza | Taylor |
| Futterman | Rebecca |

| | |
|---|---|
| Galligan | Brianna |
| Giambalvo | Peter |
| Gorgone | Matthew J |
| Green | Deonzell L |
| Greer | Bradley |
| Grey | Michael |
| Griswold | Courtnay |
| Hagai | Ravit |
| Hammond | Preston David |
| Hansen | Erica |
| Harasen | Shannon |
| Heenehan | Mathilda |
| Hersh | Daniel Jared |
| Hilger | Nathan Patrick |
| Horn | Mikah B |
| Houghton | Jordan |
| Howard | Michael |
| Johnson | Sean |
| Johnson | Ashanti |
| Johnson | Scott |
| Johnston | Katie |
| Jones | Landen |
| Juan | Cara |
| Kane | Abigail Catherine |
| Keding | Chelsey |
| Keele | Stacy |
| Keeno | Tyler |
| Khiri | Amanda |
| Kimmel | Frederick |
| Kincannon | Carly E |
| King | Jack L. |
| Kozlenko | Kyra |
| Krainik | Rebecca |
| Kranz | Lisa |
| Ladd | Samuel |
| Lanius | Kaitlyn |
| Larkin | James A. |
| Lauria | Katelyn |
| Leidinger | Nicole |
| LeProvest | Liliane |
| Licata | Kristen |
| Linberg | Barrie |
| Linley | Lauryn |
| Loeber | Francesca |
| Logan | Nancy |

| | |
|---|---|
| Luciano | Justin |
| Lucrezio | Nathan |
| Ludden | Mark |
| Mann | Tiffany |
| Maslanova-Brown | Jasmine |
| Massey | Brandi |
| Mauro | Christopher |
| Maynard | Tyler |
| McCabe | Cameron |
| McCoy | Markesha |
| McKinnon | Xavier |
| McMillian | Dorothy |
| Miller | Jenna |
| Miller | Marissa |
| Minogue | Tara |
| Mitchell | Sinclair |
| Mizro | Lori |
| Moore | Kendra |
| Morales | Katherine |
| Morgan | Kimberly |
| Morgan | Monique |
| Mullis | Brian |
| Munsch | Alia |
| Myers | Chelsea |
| Myers | Amanda Lee |
| Neuman | Claire |
| Norris | Dustin |
| O`Brien | Michael |
| Oliveri | Nicholas |
| Parfido | Lauren D |
| Patterson | Matthew L |
| Peebles | Carole Suzanne |
| Pemberton | Joshua Andrew |
| Perkins | Kerry |
| Peruo (Michalski) | Sara |
| Pevehouse | Patrick |
| Plank | Christopher |
| Plati | Kristin |
| Pope | Nicole |
| Porcellini | Danielle |
| Punwattana | Vasuthida |
| Raviv | Nicole |
| Ray | Kevin |
| Reenie | Adam John |
| Resnick | Zakary |

| | |
|---|---|
| Robillard | Kristin |
| Robinson | Eric |
| Rodet | Eric |
| Rosenbloom | Paige |
| Rothman | Robin G |
| Rush | Devyn |
| Samarago | Gabriella |
| Samardge | Mathew |
| Sanchez | Chri-Ian |
| Sanganoo | Shyvonne |
| Santosuosso | Erika |
| Scalesi | Tara |
| Schlichtin | Alan Joseph |
| Schnaitter | Anna |
| Shacknow | Marcus |
| Shade | Jonathan |
| Shepherd | Tiffany |
| Sherman | Katie |
| Shields | Heather |
| Shyer | Evan |
| Simmons | Ryan |
| Simon | Lindsay V |
| Smith | Morgan |
| Smith | Ryan |
| Smith | Nia S |
| Smith | Peter |
| Smith | Leanne |
| Smith | Jordyn |
| Snyder | Zachery |
| Socolar | David |
| Sotack | Nicholas J |
| Souza | Daniel |
| St. John | Halle |
| Stephan | Rachel |
| Stephens III | Alec Cecil |
| Stevens | Catharine |
| Surace | Sabrina Monique |
| Tatner | Elisabeth |
| Taylor | Ashley |
| Thompson | Emily |
| Thompson | Jacob R |
| Thomson | Frank |
| Thyen | John H |
| Trinkle | Amanda |
| Trumbly | Derrick |

| | |
|---|---|
| Vann | Chelsea |
| Vega | Nyseli |
| Veltz | Allison |
| Vetro | Danielle K. |
| Victor | Paul |
| Villanueva | Zurin |
| Vine | Jacob Alan |
| Vizulis | Arjana |
| Vogt - Welsh | Elisabeth |
| Von Murray | Cary |
| Wagner | Erin |
| Wakelin | Brent |
| Walbolt | John D. |
| Wall | Grace |
| Walsh | Jonathan |
| Walter | Carolyn |
| Watson | John JR. |
| Weeks | Denise |
| Welsh | Amy |
| Westhead | Danielle |
| Whitaker | Lamont Joe |
| Williams | Nikkisha |
| Williams | Paul |
| Winkles | Patrick |
| Wood | Michael |
| Woods | Helena |
| Wright | Darcy |
| Wurtz | Ashley |
| Yates | Catherine |
| Young | Anthony |
| Zarif | Yaniv |

# EXHIBIT B

## <u>NOTICE OF CLASS & COLLECTIVE ACTION SETTLEMENT</u>

**If you worked as a server at Ellen's Stardust Diner between December 21, 2010, and December 14, 2018, you can receive a payment from a class or collective action settlement.**

**THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS.
READ IT COMPLETELY AND CAREFULLY.**

*The federal court in the below-captioned lawsuit authorized this notice.
This is <u>not</u> a solicitation from a lawyer.*

---

UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF NEW YORK

Case No. 1:16-cv-09858-VSB

KEVIN RAY, BRIAN ESPOSITO, SAMUEL LADD, and JENNA MILLER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

1650 BROADWAY ASSOCIATES INC. d/b/a ELLEN'S STARDUST DINER and KENNETH STURM, jointly and severally,

Defendants.

---

- A proposed Settlement has been reached in the above-named class and collective action lawsuit currently pending in the United States District Court for the Southern District of New York, titled *Ray* et al. *v. 1650 Broadway Associates Inc.* et al., Case No. 1:16-cv-9858-VSB.

- The lawsuit concerns claims by certain former and current employees who worked as servers between December 21, 2010, and December 14, 2018, for 1650 Broadway Associates, Inc., known as "Ellen's Stardust Diner", and Kenneth Sturm (Ellen's Stardust Diner and Sturm collectively are called the "Defendants"). The lawsuit alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by: (i) automatically deducting break time that was not actually taken; (ii) diverting gratuities to sweet shop employees; (iii) diverting gratuities from party contracts; (iv) improperly claiming tip credits; (v) failing to provide accurate wage statements; and (vi) failing to provide accurate wage notices and wage statements.

1

- This Notice provides you with information about the settlement. Your legal rights may be affected by the settlement and by whether you act or do not act on certain matters discussed below. Therefore, you should read this Notice carefully and completely.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you do nothing in response to this Notice, you will remain in the Settlement and, provided the Settlement is approved by the Court, you will receive a Settlement Payment (in the form of two separate checks). However, you will also give up your rights to be part of any other lawsuit or legal proceeding about the claims made in this case and released by the Settlement. |
| **EXCLUDE YOURSELF BY [insert date 60 days form mailing of Notice]** | You can exclude yourself entirely from the Settlement. If you exclude yourself from the Settlement, you will not be bound by the Release and you will not receive a Settlement payment. This is the only option that allows you to be part of any other lawsuit or legal proceeding about the claims made in this case and released by the Settlement. If you exclude yourself from the Settlement, you will not receive a payment in this case, and you will not be able to object to the Settlement. Instructions for excluding yourself are provided in Paragraph L below. <br><br> However, if you previously signed a consent to participate in the FLSA Collective Class (discussed below at Paragraph D), you cannot exclude yourself from the Settlement. |
| **OBJECT BY [insert date 60 days form mailing of Notice]** | If you do not exclude yourself from the Settlement, you may write to the Court about why you believe the Settlement is not fair or reasonable. You must object in writing in order to speak to the Court at the Fairness Hearing (described below) about the fairness and reasonableness of the settlement. If the Court rejects your objection, and you have not excluded yourself from the settlement, you will be bound by the terms of the settlement. |
| **GO TO A HEARING ON [insert date of Final Approval Hearing]** | If you submit a written objection to the Court, and you also would like to appear at a Court hearing to speak about why you do not like the Settlement, you may indicate your intention to speak in your written objection, and you may appear at a Court hearing where the Judge will decide whether the Settlement is fair. |

- Your rights and options with respect to the Settlement—and the deadlines to exercise them—are explained below.

- The Court in charge of this case still has to decide whether to approve the Settlement. If the Court approves the Settlement, and after any appeals are resolved, payments will be made to those individuals who have not excluded themselves from the Settlement.

## <u>OVERVIEW</u>

### A.  Why did I get this Notice?

According to Defendants' records, you were employed as a server at Ellen's Stardust Diner at some point between December 21, 2010, and December 14, 2018. A proposed settlement (the "Settlement") has been reached in a class and collective action lawsuit involving Ellen's Stardust Diner's servers, named *Ray* et al. *v. 1650 Broadway Associates Inc.* et al., Case No. 1:16-cv-9858-VSB (the "Litigation") in the U.S. District Court for the Southern District of New York. District Judge Vernon S. Broderick is presiding over the Litigation. The Class Members are all persons employed who were employed as a server at Ellen's Stardust Diner at some point between December 21, 2010, and December 14, 2018**.**

You are receiving this notice because Defendants' records have identified you as a Class Member and/or you have previously consented to be a plaintiff in the collective action. As a Class Member, you are covered by the Settlement. Your rights may be affected by the Settlement. This notice describes the Settlement, explains your rights and options, and describes how you can object to the Settlement or exclude yourself from the Settlement if you have not previously opted in to the collective.

### B.  What is this Lawsuit about, and why did it settle?

On December 21, 2016, Plaintiffs Kevin Ray, Brian Esposito, Samuel Ladd, and Jenna Miller (the "Named Plaintiffs") commenced a proposed class and collective action against Defendants. As set forth in an amended complaint, plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by: (i) automatically deducting break time that was not actually taken; (ii) diverting gratuities to sweet shop employees; (iii) diverting gratuities from party contracts; (iv) improperly claiming a tip credit; (v) failing to provide accurate wage statements; and (vi) failing to provide accurate wage notices and wage statements.

Even though the parties believe their respective claims and defenses are strong, they have decided to settle. While the Plaintiffs are prepared to proceed with litigating the case, they recognize that litigating involves risk, and that they may not prevail on any or all of their claims if the case proceeds to trial. Defendants deny the Named Plaintiffs' allegations and maintain that their servers were properly paid under the FLSA and NYLL. Defendants are confident that they have strong legal and factual arguments that would resolve the Named Plaintiffs' claims in Defendants' favor, but because they also recognize the risks, distractions, and costs involved with further litigation and trial they have decided to settle. The Court has not ruled on the merits of the Plaintiffs' claims or Defendants' defenses.

This Settlement is the result of good-faith, arms-length negotiations between the parties, through their respective attorneys and with the aid of a mediator (*i.e.*, a neutral third party to facilitate negotiations). Both sides agree that in light of the risks and expenses associated with continued litigation, this Settlement is fair and appropriate under the circumstances and in the best interests of the Class Members.

The attorneys for the Class Members in the action ("Class Counsel") are:

Benjamin N. Dictor                        Roger J. Bernstein
Thomas J. Lamadrid                        Attorney at Law
Eugene G. Eisner                          535 Fifth Avenue, 23rd Floor
EISNER & DICTOR, P.C.                      New York, NY
39 Broadway, Suite 1540                   Phone: (212) 748-4800
New York, NY 10006
Phone: (212) 473-8700

On **[insert date of Preliminary Settlement Approval]**, the Court granted preliminary approval of the proposed Settlement. The Court will decide whether to give final approval to the proposed Settlement at a hearing scheduled for **[insert date of Final Approval Hearing]** (the "Final Approval Hearing") at **[insert time of Final Approval Hearing]** in Courtroom _____ of the United States District Court for the Southern District of New York, located at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007. See Paragraph **P** for details.

### C.  What are class and collective actions, and why is this action a class and collective?

In a class and collective action, one or more people sue not only for themselves, but also for other people who have similar claims. These other people are called class members or collective class members. In class and collective actions, the plaintiffs ask the court to resolve the issues for all class members and all collective class members.

In this action, the Plaintiffs have brought NYLL claims as a class action (pursuant to Rule 23 of the Federal Rules of Civil Procedure) and FLSA claims as a collective action under the FLSA. Members of the class action are members of the Rule 23 Class. Members of the collective action are members of the FLSA Collective Class. For purposes of the Settlement, Class Members means both members of the Rule 23 Class and members of the FLSA Collective Class. Your Settlement Payment will not be affected by which Class you are in. The payments will be computed in the same manner regardless of the Class you are in.

### D.  Who are the members of the Rule 23 Class and who are the members of the FLSA Collective Class?

The FLSA Collective Class: The FLSA Collective Class is comprised of 91 servers employed at Ellen's Stardust Diner between December 21, 2010, and December 14, 2018, who elected to participate in the Litigation by completing, signing, and returning for filing a Consent to Become

a Party Plaintiff form. If you are one of the individuals who has opted into the FLSA Collective Class, you cannot exclude yourself from the Settlement. The Court has certified, for settlement purposes only, the following FLSA Collective Class:

> All individuals who have filed a Consent to Become a Party Plaintiff under the FLSA in the Litigation.

The Rule 23 Class: The Rule 23 Class is comprised of all servers employed at Ellen's Stardust Diner between December 21, 2010, and December 14, 2018, including the members of the FLSA Collective Class. For the purposes of Settlement, the Court has certified the following Class:

> All individuals who worked as servers at 1650 Broadway Associates Inc. d/b/a Ellen's Stardust Diner at any time between December 21, 2010 and December 14, 2018.

Your settlement payment will not be affected by which Class you are in.  The payments to Class Members will be computed in the same manner regardless of which Class you are in.

### E.  What are my options if I opted in to the FLSA Collective Class?

If you worked as a server at Ellen's Stardust Diner between December 21, 2010 and December 14, 2018 and filed a "Consent to Become a Party Plaintiff," you are a member of the FLSA Collective Class. As a member of the FLSA Collective Class, if you do nothing, you will receive a payment after the Final Approval Hearing on **[insert date of Final Approval Hearing]** if the Court finally approves the Settlement. You can object to the Settlement by filing a timely written objection. You may speak at the Final Approval Hearing on **[insert date of Final Approval Hearing]** by indicating your wish to speak at the Hearing in your written objection. Objections are discussed further in Paragraph M below.

### F.  What are my options if I did not opt in to the FLSA Collective Class, but I am a member of the Rule 23 Class?

If you worked as a server at Ellen's Stardust Diner between December 21, 2010 and December 14, 2018, then you are a member of the Rule 23 Class. As a member of the Rule 23 Class, if you do nothing, you will receive a payment after the Final Approval Hearing on **[insert date of Final Approval Hearing]** if the Court finally approves the Settlement. You may also object to the Settlement by filing a timely written objection. You may speak at the Final Approval Hearing by indicating your wish to speak at the Hearing in your written objection.

You may also exclude yourself from the Settlement by mailing written notice to the Claims Administrator that you want to be excluded, as discussed in Paragraph L below. If you exclude yourself, you will not release the Defendants from any claims you may have, but you will <u>not</u> receive a payment and you cannot object to the Settlement.

### G.  What does the Settlement provide, and how much will I be paid?

Subject to Court approval, Defendants will pay a maximum of $1,450,000.00 (the "Settlement Amount") to settle the Litigation.

Portions of the Settlement Amount will be used to pay Class Counsel's approved fees and costs of up to 33% of the Settlement Amount and service payments of $5,000.00 to each of the Named Plaintiffs in recognition of their service to the Class. Your pro-rata share of the Settlement Amount will be based on when you worked for Defendants and the number of shifts and in some instances the number of hours that you worked for defendants between December 21, 2010 and . December 14, 2018**.**  Wage reductions due to automatic break time deductions shown in defendants' records, to diversion of gratuities, and to improperly claimed tip credits will be paid in full, less legal fees and service payments awarded by the Court out of the Settlement Fund. Claims for deficient wage notice and wage statement penalties will be partially paid and will also be subject to deduction of legal fees and service payments as awarded by the Court.
 Half of your payment will be taxed as wages, and the other half of your payment will be paid without tax withholdings (more on taxes in Paragraph J below). Defendants will not make any payment to members of the Rule 23 Class who opt out of the Settlement.

### H.  How can I receive my payment?

If the Settlement is approved and you have not excluded yourself from the Settlement, you will receive one half of your Settlement payment by mail within approximately 10 weeks after the Court's Final Approval Hearing and the other half during 2020.  You do not need to take any steps in order to receive your payment.

The Claims Administrator is Rust Consulting. The Claims Administrator will mail you your payment. **You must contact the Claims Administrator with any changes to your legal name or your mailing address.** You can contact the Claims Administrator below:

> Rust Consulting
> Claims Administration (Ellen's Stardust Diner Settlement)
> 625 Marquette Avenue, Suite 900
> Minneapolis, MN 55402
> Phone: (612) 359-2000
> Email: _____

### I.  When will I receive payment?

The Court will hold a hearing on **[insert date of Final Approval Hearing]** to determine whether to approve the Settlement. If the Court approves the Settlement, and after any appeals are resolved, the Claims Administrator will mail your payment directly to you after the Effective Date of the settlement. Please be patient. Your payment may be made in two equal halves or in a single check.

**You will have 90 days after your check(s) are mailed to cash them. After the 90-day period, the checks will be void If you lose or don't receive your checks, you must request a replacement check within 90 days of the check's initial issue date. All replacement checks will be valid for 30 days. After the 30-day period expires, the replacement check will be void.**

### J.  How will my payment be taxed?

One-half of your settlement payment will be paid in the form of a payroll check from which all ordinary payroll taxes and withholdings will be deducted. This payment will be reported on an IRS Form W-2 issued at the appropriate time. The withholding amounts will be based on the last W-4 that you filed with the defendants, unless you send a new W-4 to the Settlement Administrator.  The other half of your payment will be paid in the form of a non-payroll check from which no payroll taxes or withholdings will be deducted. This payment will be reported on an IRS Form 1099 issued at the appropriate time and you will be responsible for paying any applicable taxes on this payment.

If you have any questions regarding the tax treatment of any payments pursuant to the Settlement, you should consult your own tax advisor.

### K.  What am I giving up in exchange for receiving a payment?

If the Court grants final approval of the Settlement and you are a Class Member (*i.e.,* you are a member of the FLSA Collective Class or you didn't exclude yourself from the Rule 23 Class), you will forever and fully release 1650 Broadway Associates Inc. d/b/a Ellen's Stardust Diner and Kenneth Sturm, as well as their current and former owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsurers, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them (the "Released Parties"), from all wage and hour and retaliation claims asserted in the Litigation, or that could have been asserted in the Litigation, under the Fair Labor Standards Act ("FLSA") and/or the NYLL. The Released Claims include, but are not limited to, all claims for regular or overtime wages, any related wage and hour claims, all claims for gratuities, NYLL § 195 penalties, all related derivative benefit claims (both ERISA and non-ERISA benefits), the claims of retaliation that Plaintiffs sought to add to their Amended Complaint as set forth in Class Counsel's letter to the Court dated July 26, 2017, interest on such claims, and attorneys' fees and costs related to such claims through the date of the Final Approval Order.

When claims are "released," that means that a person covered by the release cannot sue the released parties for any of the claims that are covered by the release.

### L.  How do I exclude myself from the Settlement?

If you are a member of the Rule 23 Class and do not want to participate in the Settlement, you must send a letter by mail to the Settlement Administrator saying that you want to be excluded from *Ray* et al. *v. 1650 Broadway Associates Inc.* et al., Case No. 1:16-cv-9858-VSB. The letter

must include the words "I am excluding myself from the Ellen's Stardust Diner servers' wage and hour settlement." You must also include your name, address, telephone number, and signature. In order to be valid, your opt-out statement must be received by the Claims Administrator with a postmark date on or before **[insert date 60 days after mailing of Notice]**.

If you properly submit a  request to be excluded from the Settlement, you will not be eligible to receive any of the benefits under the Settlement. Additionally, you will not be legally bound by anything that happens in this lawsuit and you will retain whatever legal rights you have against the Defendants subject to applicable statutes of limitations, which means that they will expire on a certain date.

### M. How do I object to the Settlement?

If you do not request exclusion from the Settlement but believe the proposed Settlement is unfair or inadequate in any respect, you may object to the Settlement, by filing a written objection with the Court and mailing a copy of your written objection to the Claims Administrator at the following address:

> Rust Consulting
> Claims Administration (Ellen's Stardust Diner Settlement)
> 625 Marquette Avenue, Suite 900
> Minneapolis, MN 55402

All objections must be signed and set forth your address, telephone number, and the name and number of the case (*Ray* et al. *v. 1650 Broadway Associates Inc.* et al., Case No. 1:16-cv-9858-VSB). Your objection must include the words, "I object to the settlement in the Ellen's Stardust Diner server case" as well as your reasons for the objection and must state whether you or someone on your behalf intends to appear at the Final Approval Hearing. Your objection must be postmarked no later than **[insert date 60 days form mailing of Notice]**. If you submit a timely objection, you may appear, at your own expense, at the Final Approval Hearing, discussed below.

If you do not object in the manner described above, you shall be deemed to have waived any objections, and shall forever be foreclosed from objecting to the proposed Settlement, including its fairness or adequacy, the payment of attorneys' fees, litigation costs, the service awards to the Named Plaintiffs, the claims process, and any and all other aspects of the Settlement.

### N.  What is the difference between excluding myself and objecting?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you are a member of the Rule 23 Class or of the FLSA Collective Class. Excluding yourself is telling the Court that you don't want to be part of the Class Action. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

### O.  What if I do nothing?

If you do nothing in response to this Notice and the Court approves the Settlement, then some time after the Final Approval Hearing the Claims Administrator will mail your settlement payment to the last known address in Defendants' employment file, or to any address you have updated with the Claims Administrator. You will also be deemed to have released Defendants and the Released Parties from all of your wage and hour and wage payment claims, known or unknown, that are related to work as a server between December 21, 2010 and December 14, 2018. That is, you will be deemed to have forever and fully released 1650 Broadway Associates Inc. d/b/a Ellen's Stardust Diner and Kenneth Sturm, as well as their current and former owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsurers, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all wage and hour and retaliation claims asserted in the Litigation, or that could have been asserted in the Litigation, under the FLSA and/or the NYLL.

### P.  When is the Final Approval Hearing?

The Court will hold a Final Approval Hearing on the fairness, reasonableness and adequacy of the proposed Settlement, the plan of allocation, Class Counsel's request for attorneys' fees and costs, the administrative costs, and the service awards to the Named Plaintiffs on **[insert date of Final Approval Hearing]** at **[insert time of Final Approval Hearing]** in Courtroom _____ of the United States District Court for the Southern District of New York, located at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007.

At the hearing, the Court will decide whether the Settlement is fair, reasonable, and adequate. If there are objections to the Settlement, the Court will consider them. You may attend the hearing and you speak if you have indicated a wish to speak in a timely filed written objection, but you do not have to.

After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

### Q.  Do I have to attend the Final Approval Hearing?

No. Class Counsel will answer questions the Court may have. You are welcome to come (at your own expense). If you mail an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend but it is not necessary.

### R.  Do I have a lawyer in this case?

Yes. The Court has decided that Benjamin N. Dictor and Thomas J. Lamadrid of Eisner & Dictor, P.C. and Roger J. Bernstein are qualified to represent you and all Class Members. More information about Eisner & Dictor, P.C. is available at www.eisnerdictor.com. More information about Roger J. Bernstein is available at www.rjblaw.com. These lawyers have been designated as "Class Counsel" in this lawsuit. You will not be charged for these lawyers unless you participate in the Settlement, in which case up to a third of your gross settlement payment will be retained

and paid to these lawyers as attorneys' fees. You will not be charged "out-of-pocket" for the Class Counsel. You do not need to retain your own attorney in order to participate as a Class Member. If you do not exclude yourself from the Class and want to be represented by your own lawyer, you may hire one at your own expense.

**S.   How can I get additional information?**

This Notice only summarizes the Litigation, the Settlement, and other related matters. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by sending a request, in writing, to the Claims Administrator at the following address:

> Rust Consulting
> Claims Administration (Ellen's Stardust Diner Settlement)
> 625 Marquette Avenue, Suite 900
> Minneapolis, MN 55402
> Phone: (612) 359-2000

If you have other questions about the Settlement or this notice, you can contact the Claims Administrator at the above address and telephone number. You can also find more information on the website for the Settlement: _____.

Should you wish to contact Class Counsel, they can be reached at the following addresses, telephone numbers, and email addresses:

> Benjamin N. Dictor                           Roger J. Bernstein
> Thomas J. Lamadrid                          Attorney at Law
> EISNER & DICTOR, P.C.                   535 Fifth Avenue, 23rd Floor
> 39 Broadway, Suite 1540                   New York, NY
> New York, NY 10006                         Phone: (212) 748-4800
> Phone: (212) 473-8700

**T.   What if my name or address change?**

If your name or mailing address information changes, you must fully complete, execute, and mail the Change of Name and/or Address Information Form (enclosed with this Notice as Form B).

**PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS NOTICE**