UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN RAY, BRIAN ESPOSITO, SAMUEL LADD and JENNA MILLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>1650 BROADWAY ASSOCIATES INC. d/b/a ELLEN'S STARDUST DINER and KENNETH STURM, jointly and severally,<br><br>Defendants. | No.: 1:16-cv-09858 (VSB) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENT, AN AWARD OF ATTORNEYS' FEES
<u>AND EXPENSES, AND APPROVAL OF SERVICE AWARDS</u>**

Benjamin N. Dictor
EISNER & DICTOR, P.C.
39 Broadway, Suite 1540
New York, NY 10006
(212) 473-8700
ben@eisnerdictor.com

and

ROGER J. BERNSTEIN
535 Fifth Avenue, 23rd Floor
New York, NY 10017
(212) 748-5800
rbernstein@rjblaw.com

*Counsel for Plaintiffs and Class Members*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2

  A.   Summary of Plaintiffs' Factual Allegations................................................... 2

  B.   Procedural History........................................................................................ 3

II.     SUMMARY OF THE SETTLEMENT TERMS ......................................... 7

  A.   The Settlement Fund .................................................................................... 7

  B.   Settlement Classes ....................................................................................... 9

  C.   Releases; Counterclaims .............................................................................. 9

  D.   Attorneys' Fees and Costs ........................................................................... 9

  E.   Claims Administrator ................................................................................. 10

  F.   Service Awards .......................................................................................... 10

  G.   Class Action Settlement Procedure & Schedule ........................................ 10

III.    ARGUMENT.............................................................................................. 11

  A.   The Settlement Class Meets the Legal Standard for Class Certification. ...... 11

  B.   The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be
       Approved in All Respects. ......................................................................... 12

     1.   The Proposed Settlement Is Procedurally Fair........................................ 13

     2.   The Proposed Settlement Is Substantively Fair. ..................................... 14

         (a)   *Grinnell* Factor 1: Further Litigation and Trial Would Be Complex,
              Costly, and Long ..................................................................... 14

         (b)   *Grinnell* Factor 2: The Reaction of the Class Has Been Positive ................... 15

         (c)   *Grinnell* Factor 3: This Proceeding Has Progressed Through Multiple
              Stages and Enough Discovery Has Occurred to Allow for a
              Responsible Resolution of the Case................................................. 16

(d)    *Grinnell* Factors 4 & 5: Plaintiffs Would Face Risk As to Liability and Damages Determinations If the Case Proceeded ............................................ 17

(e)    *Grinnell* Factor 6: Establishing and Maintaining the Class Through Trial Presents Risk .................................................................................... 18

(f)    *Grinnell* Factor 7: Defendants' Ability to Withstand a Greater Judgment Is Not Determinative ...................................................... 18

(g)    *Grinnell* Factors 8 & 9: The Settlement Fund is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation .......................................................................................... 19

C.    Approval of the FLSA Settlement Is Appropriate Under Federal Law ........................ 22

D.    Counsel Are Entitled to a Reasonable Fee of 30% of the Settlement Fund. ................. 22

1.    Plaintiffs' Counsel's Time and Labor. ................................................. 26

2.    Magnitude and Complexity of the Litigation. ......................................... 30

3.    Risk of Litigation. ....................................................................... 31

4.    Quality of Representation. .............................................................. 32

5.    Attorneys' Fees in Relation to the Settlement Amount. ........................... 33

6.    Public Policy Considerations. .......................................................... 35

E.    The Lodestar Cross Check Further Supports an Award to Plaintiffs' Counsel of 30% of the Settlement Amount ............................................................................. 36

1.    Plaintiffs' Counsel's Rates are Reasonable Market Rates. ........................ 38

F.    Plaintiffs' Counsel Are Entitled to Reimbursement of Expenses Under the Settlement Agreement ............................................................................................ 39

G.    The Requested Service Awards Are Reasonable and Should Be Approved. ................. 39

1.    Plaintiffs Assumed Significant Risks. ................................................ 40

2.    The Class Representatives Expended Significant Time and Effort. ............. 41

3.    The Ultimate Recovery Supports the Requested Service Awards. ............... 42

CONCLUSION ............................................................................................ 42

## <u>TABLE OF AUTHORITIES</u>

**Cases**

A.H. Phillips, Inc. v. Walling, 324 U.S. 490 (1945) ...................................................... 35

Acevedo v. Workfit Med. LLC, 187 F. Supp. 3d 370 (W.D.N.Y. 2016) ..................................... 34

Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41 (E.D.N.Y. 2010) ................................. 35

Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany
    County Board of Elections, 522 F.3d 182 (2d Cir. 2008) ........................................... 25

Armenta et al v. Dirty Bird Group LLC., 13-CV-04603-WHP, ECF Doc. No. 67
    (S.D.N.Y. Aug. 1, 2014) ....................................................................... 37

Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728 (1981) ................................... 30

Baten v. Mr. Kabob Rest. Inc., 16-CV-9559 (VSB), 2019 WL 11274597 (S.D.N.Y. Oct.
    18, 2019) .......................................................................... 23, 37

Beckman v. KeyBank, N.A., 293 F.R.D. 467 (S.D.N.Y. 2013) ........................................... passim

Berni v. Barilla S.p.A., 964 F.3d 141 (2d Cir. 2020) ............................................... 13

Castagna v. Madison Square Garden, L.P., No. 09 Civ. 10211, 2011 WL 2208614
    (S.D.N.Y. June 7, 2011) ......................................................................... 19

Christine Asia Co., Ltd. v. Yun Ma, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............. 12, 14

City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974), abrogated on other
    grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000) ......... 12, 14, 19, 21

Court Awarded Attorney Fees, 108 F.R.D. 237 (1986) ................................................ 25

Cullen v. Fliegner, 18 F.3d 96 (2d Cir. 1994) ..................................................... 29

D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001) .......................................... 12, 13, 14, 30

Davenport v. Elite Model Mgmt. Corp., No. 1:13-CV-01061-AJN, 2014 WL 12756756
    (S.D.N.Y. May 12, 2014) ......................................................................... 22

Davis v. J.P. Morgan Chase & Co., 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................... 23

deMunecas v. Bold Food, LLC, 09 CIV. 00440 DAB, 2010 WL 3322580 (S.D.N.Y. Aug.
    23, 2010) .......................................................................... 34

Denney v. Deutsche Bank AG, 443 F.3d 253 (2d Cir. 2006) ........................................... 11

Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper, 445 U.S. 326 (1980) ............................ 24, 36

deRodriguez v. Lenox & 132nd Food Corp., 17-cv-02439-JLC, ECF Doc. No. 39
  (S.D.N.Y. Apr. 17, 2018).............................................................................................. 37

Diaz v. E. Locating Serv., No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29,
  2010) .......................................................................................................................... 34

Diaz v. Waverly Meat & Grocery Inc., 1:15-cv-01799-MDG, ECF Doc. No. 19
  (E.D.N.Y. January 25, 2016) ........................................................................................ 37

Dorn v. Eddington Sec., Inc., No. 08 Civ. 10271 LTS, 2011 WL 9380874 (S.D.N.Y.
  Sept. 21, 2011) ........................................................................................................... 18

Duchene v. Michael Cetta, Inc., No. 06 Civ. 4576(PAC), 2009 WL 5841175 (S.D.N.Y.
  Sept. 10, 2009) ........................................................................................................... 34

Elliot v. Leatherstocking Corp., No. 3:10-CV-0934 MAD/DEP, 2012 WL 6024572
  (N.D.N.Y. Dec. 4, 2012)............................................................................................. 32

Escobar v. Pret A Manger (USA) Limited, 1-17-CV-05227 (VSB), 2019 WL 11272914
  (Feb. 14, 2019) ........................................................................................................... 23

Fleisher v. Phoenix Life Ins. Co., No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y.
  Sept. 9, 2015) ............................................................................................................. 19

Flores v. Anjost Corp., No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) .. 12, 13, 42

Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005) (internal quotation marks
  omitted)....................................................................................................... 19, 32, 40, 42

Garcia v. Pasquareto, 812 N.Y.S.2d 216 (N.Y. App. Term. 2004) ............................... 36

Gilliam v. Addicts Rehab. Ctr. Fund, 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016
  (S.D.N.Y. Mar. 24, 2008) ..................................................................................... 19, 33

Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000) ................................ 12, 26, 30, 36

Granada Invest., Inc. v. DWG Corp., 962 F.2d 1203 (6th Cir. 1992) .......................... 17

Guippone v. BH S & B Holdings, LLC, No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y.
  Oct. 28, 2011) ............................................................................................................ 41

Hall v. ProSource Techs., LLC, No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y.
  Apr. 11, 2016)...................................................................................................... 30, 36

Hamsher v. The Scotts Company, LLC, 17-CV-04206 (VSB), ECF Doc. No. 58
  (S.D.N.Y Feb. 10, 2020)................................................................................ 20, 23, 37

In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164 (S.D.N.Y. 2000), aff'd sub nom. D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001) ................... 14, 16, 30

In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d 344 (S.D.N.Y. 2014) ...................... 36

In re Indep. Energy HoldingsPLC Sec. Litig., 302 F. Supp. 2d 180 (S.D.N.Y. 2003) ............... 39

In re Lloyd's Am. Trust Fund Litig., No. 96 Civ.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ................................................................................................. 24

In re Nigeria Charter Flights Litig., No. 04-CV-304, 2011 WL 7945548 (E.D.N.Y. Aug. 25, 2011), report and recommendation adopted, No. 04-CV-304, 2012 WL 1886352 (E.D.N.Y. May 23, 2012) .......................................................................................... 34, 35

In re PaineWebber Ltd. P'ships Litig., 147 F.3d 132 (2d Cir. 1998) .......................................... 13

In re Patriot Natl., Inc. Sec. Litig., 828 Fed. App'x 760 (e. 2020) ............................................... 20

In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig., 05MD1720MKBJO, 2019 WL 6888488 (E.D.N.Y. Dec. 16, 2019) ........................................ 24

In re Sumitomo Copper Litig., 74 F.Supp.2d 393 (S.D.N.Y.1999) ....................................... 25, 35

In re Zyprexa Prods. Liab. Litig., 594 F.3d 113 (2d Cir. 2010) .................................................... 24

Kapoor v. Rosenthal, 269 F.Supp.2d 408 (S.D.N.Y. 2003) .......................................................... 29

Khait v. Whirlpool Corp., No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................................................................................................ 24, 36, 39, 40

Lizondro-Garcia v. Kefi LLC, No. 12 Civ. 1906, 2014 WL 4996248 (S.D.N.Y. Oct. 7, 2014) ........................................................................................................................... 12

Maley v. Del Glob. Techs. Corp., 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................... 15

Manley v. Midan Rest. Inc., No. 14 Civ. 1693 (HBP), 2017 WL 1155916 (S.D.N.Y. Mar. 27, 2017) ....................................................................................................................... 18

Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423 (2d Cir. 2007) ................................... 34

McMahon v. Olivier Cheng Catering and Events, LLC, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...................................................................................... 40

Mei Na Lao v. Chung Chou City, LLC, No. 16-CV-9193 (AJN), 2018 WL 2170298 (S.D.N.Y. May 10, 2018) ........................................................................................................ 38

Melito v. Am. Eagle Outfitters, Inc., 14-CV-2440 (VEC), 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017), aff'd in part, appeal dismissed in part sub nom. Melito v Experian Mktg. Sols., Inc., 923 F3d 85 (2d Cir. 2019) .......................................................................... 11

Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................... 25

Oppenlander v. Standard Oil Co., 64 F.R.D. 597 (D. Colo. 1974) ............................................... 18

Palacio v. E*Trade Fin. Corp., No. 10 Civ. 4030, 2012 WL 2384419 (S.D.N.Y. June 22, 2012) ....................................................................................................................................... 41

Parker v. Jekyll & Hyde Entm't Holdings, L.L.C., No. 08 Civ. 7670 (BSJ), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ........................................................................................ passim

Raniere v. Citigroup Inc., 310 F.R.D. 211 (S.D.N.Y. 2015) ....................................................... 38

Redzepagic v. Hammer, No. 14 CIV. 9808 (ER), 2017 WL 1951865 (S.D.N.Y. May 8, 2017) ....................................................................................................................................... 38

Rodriguez v. Avondale Care Group, LLC et al., No. 1:16-cv-03084-SN, ECF Doc. No. 88 (S.D.N.Y. Aug. 27, 2018) ............................................................................................... 37

Saber v. New York State Dept. of Fin. Services, 115-CV-05944 (LGS), 2019 WL 4781781 (S.D.N.Y. Sept. 6, 2019), report and recommendation adopted, 15 CIV. 5944 (LGS), 2019 WL 4747670 (S.D.N.Y. Sept. 30, 2019) ............................................................ 29

Sanchez v. N.Y. Kimchi Catering, Corp., 320 F.R.D. 366 (S.D.N.Y. 2017) ............................... 32

Saunders v. City of N.Y., 07 Civ. 830, 2009 WL 4729948 (S.D.N.Y. Dec. 9, 2009) .................. 38

Savoie v. Merchs. Bank, 166 F.3d 456 (2d Cir. 1999) ................................................................. 25

Scott v. City of New York, 643 F.3d 56 (2d Cir. 2011) ................................................................. 38

Sewell v. Bovis Lend Lease, Inc., No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ............................................................................................................................ passim

Shapiro v. JPMorgan Chase & Co., No. 11 Civ. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ....................................................................................................................... 20

Siler v. Landry's Seafood House - N. Carolina, Inc., No. 13-CV-587 RLE, 2014 WL 2945796 (S.D.N.Y. June 30, 2014) ......................................................................................... 30

Strougo v. Bassini, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .......................................................... 17

Taft v. Ackermans, 02 CIV. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .............. 32

Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd., Master File No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ........................................................ 19

Tiro v. Pub. House Investments, LLC, No. 11 CIV. 7679 CM, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ...................................................................................................... 17

Torres v. Gristede's Operating Corp., Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ......................................................... 42

Vaccaro v. New Source Energy Partners L.P., No. 15 cv 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ......................................................... 18

Velez v. Majik Cleaning Serv., Inc., No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......................................................................................... 39

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005) ............................... passim

Westerfield v. Washington Mut. Bank, No. 06-CV-2817(JMA), 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) ......................................................................................... 34

Willix v. Healthfirst, Inc., 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................................... 23

Yuzary v. HSBC Bank USA, N.A., No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ......................................................................................... 40

Zeltser v. Merrill Lynch & Co., No. 13 Civ. 1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ......................................................................................... 40

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. passim

# INTRODUCTION

First, Plaintiffs respectfully request that the Court grant their motion for certification of the settlement class and final approval of the class action settlement. As shown in Part III, below, the $1.45 million settlement of this wage and hour class action and FLSA collective action satisfies the criteria for final settlement approval. Plaintiffs therefore seek an order: (1) certifying the settlement classes; and (2) granting final approval as fair, adequate and reasonable for the Rule 23 class action and FLSA settlements as set forth in the Class Action Settlement Agreement ("Settlement Agreement"). (The Settlement Agreement is Exhibit 1 to the Declaration of Benjamin N. Dictor dated February 3, 2021 ("Dictor Decl.").)[1]

Second, Plaintiffs' Counsel respectfully move for an award of attorneys' fees in the amount of $435,000, which is 30% of the $1,450,000 of the Settlement Fund, plus an award of costs and expenses in the amount of $5,597.61 incurred by Plaintiffs' Counsel in prosecuting this action. For the reasons set forth in Part III(C), below, Plaintiffs' Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek should be approved as fair and reasonable under the governing legal standards.

Lastly, Plaintiffs' Counsel respectfully request that the Court approve service awards for Plaintiffs Kevin Ray, Brian Esposito, Samuel Ladd, and Jenna Miller ("Plaintiffs" or "Class Representatives") in the amount of $5,000 each, in recognition of the considerable services they have rendered on behalf of the class ("Service Awards").

Together with this memorandum and the Dictor Decl., Plaintiffs submit the Declaration of Roger J. Bernstein dated February 3, 2021 ("Bernstein Decl.") and the Declaration of Sara Schwermer-Sween dated February 2, 2021 ("Schwermer Sween Decl.") in support of their

---

[1] Unless otherwise stated, all defined terms herein reflect the definitions in the Settlement Agreement. Unless otherwise indicated, all exhibits are attached to the Dictor Declaration.

Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, an Award of Attorneys' Fees and Expenses, and Approval of Service Awards.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Summary of Plaintiffs' Factual Allegations

Plaintiffs Kevin Ray, Brian Esposito, Samuel Ladd, and Jenna Miller, together with the Class Members in this action, worked as servers at Defendants' "Ellen's Stardust Diner" ("Ellen's"), a popular restaurant in the Times Square area. Dictor Decl. ¶ 2. Defendant Kenneth Sturm, through defendant 1650 Broadway Associates, Inc., is an owner of Ellen's (1650 Broadway Associates, Inc. and Sturm collectively "Defendants"). *Id*.

In addition to an hourly wage at the sub-minimum rate for tipped employees, Plaintiffs and Class Members were paid with cash tips from a tip pool and/or tip-sharing arrangement run by management.[2] Dictor Decl. ¶ 8. The initial Complaint alleges that Defendants improperly took a "tip credit" and paid Class Members a reduced minimum wage, which the FLSA and NYLL sometimes permit for tipped employees but not under the circumstances present here. *Id*. Specifically, the Complaint alleges that Defendants required their servers to share tips with ineligible employees ("Sweet Shop" employees) at the end of each shift, thereby disqualifying Defendants from claiming the tip-credit required for paying a sub-minimum wage. *Id*. In addition, the Complaint alleges that Defendants routinely withheld portions of gratuity charges paid by customers who hosted parties at Ellen's. *Id*. This would also disqualify Defendants from claiming a tip-credit and therefore from paying a sub-minimum wage to tipped employees. In their Amended Complaint, Plaintiffs further allege that the annual wage statements given to them and other servers with each paycheck violated the requirements of the NYLL. *Id*. The Amended

---

[2] Some of the Plaintiffs and Class Members have continued to work at Ellen's when circumstances permit. Dictor Decl.¶ 2.

Complaint alleges that these statements did not accurately reflect the number of hours worked by servers, failed to show the regular hourly rate of pay, and failed to show the tip credit amounts being claimed by Defendants. *Id*. As a result of negotiated early document production, Plaintiffs' Counsel learned that the wage notices provided to employees were deficient in their representation of tipped employees' regular hourly rate. While the notices correctly advised employees of the amount of the tip credit to be claimed, they represented the amount net of the tip credit to be the regular hourly rate, which is misleading and a violation of the NYLL.

### B. Procedural History

Before initiating this action, Plaintiffs' Counsel conducted a detailed investigation into the merits of the potential claims and defenses. Dictor Decl. ¶ 3. Plaintiffs' Counsel gathered information about Defendants' computerized system for food and drink sales ("POSitouch"), about the functions of the non-tipped employees, and about the Defendants' alleged diversion of party gratuities, among other things. *Id*. Plaintiffs' Counsel also conducted in-depth interviews with Plaintiffs and other employees to gather this information. *Id.*

The complaint was filed on December 21, 2016. Dictor Decl. ¶ 6. The complaint alleges collective action claims for an "opt in" class of servers under the FLSA, as well as a Fed. R. Civ. P. 23 class action for all other servers for claims under NYLL. *Id.*; *see also* ECF Doc. No. 2. After Defendants sought to file a motion to dismiss raising *Twombly-Iqbal* issues, Plaintiffs filed an amended complaint with additional detail concerning their allegations on May 25, 2017. Dictor Decl. ¶ 8; ECF Doc. No. 112; *see also* ECF Doc. Nos. 108, 111.

On July 12, 2017, Defendants filed an "Answer and Counterclaim and Third-Party Complaint" asserting counterclaims against the Plaintiffs and against additional plaintiffs who had opted in pursuant to the FLSA, as well as putative "third party" claims against thirteen non-party former employees characterized as "Third-Party Defendants." Dictor Decl. ¶ 10; ECF Doc.

No. 118 at 24-25. Defendants' counterclaims and "third party" claims alleged conversion, civil theft, aiding and abetting, faithless employee, unjust enrichment, fraud, theft by deception, and violations of the Computer Fraud and Abuse Act ("CFAA"). *Id.* In substance, the counterclaims alleged that numerous servers were allegedly stealing money from Defendants by manipulating receipts and pocketing cash from customers, rather than recording the monies as revenue for Ellen's. Defendants also claimed that employees made unauthorized transactions in the "point of sale" computer system in violation of the CFAA, for the purpose of diverting funds. *Id.*

Following Plaintiffs' Counsel's successful advocacy on behalf of multiple Class Members at the National Labor Relations Board ("NLRB") and New York State Department of Labor ("NYS-DOL"),[3] counsel for the parties met in person on October 17, 2017 to discuss Plaintiffs' claims, negotiate for the production of key defendant documents, and explore the possibility of settlement on a class-wide basis. Dictor Decl. ¶¶ 12-13. The meeting was successful in that Defendants agreed to produce the requested documents and to continue exploration of settlement. Dictor Decl. ¶ 13.

Thereafter Counsel requested delivery in computer-readable form of the information necessary for determining the dollar amount of tip credits taken for the period from December 21, 2010, until December 21, 2016, the dollar amount of employee gratuities that were allegedly improperly withheld by the employer, and the applicable penalties for failure to provide compliant wage notices and wage statements. Dictor Decl. ¶¶ 15-20. The information provided included: (i) the number of hours worked by all servers for each shift and week between December 21, 2010 and December 21, 2016, from Defendants' point-of-service timeclock (called "POSitouch"); (ii) the hourly rates at which each server was compensated for each week

---

[3] See Part III(D)(1) of this Memorandum for a discussion of the litigation before the NYS-DOL and NLRB.

from December 21, 2010 until the commencement of this action; and (iii) an accounting of all "handling fees" retained by the Defendants during that period that plaintiffs contend are unlawfully withheld gratuities. Dictor Decl. ¶ 18.

From the records Defendants supplied, Counsel learned that Defendants were deducting one half-hour in their payroll submissions for meal breaks – even though meal breaks were not being taken. Dictor Dec. ¶¶ 16, 19. These deductions were made for all servers working shifts of six and one-half hours or more. *Id.* These deductions were made by hand prior to computer processing of Defendants' payroll and issuance of employee paychecks. *Id.* The wage statements given to Defendants' employees with their paychecks never informed them that this deduction was being taken. *Id.*

Defendants' efforts to compile the required (and voluminous) information took over six months, and the last portion of the information was delivered to Plaintiffs on July 5, 2018. Dictor Decl. ¶81. Thereafter, in August 2018, the parties began to exchange names of proposed mediators, finally agreeing to conduct mediation before Carol Wittenberg, a mediator with extensive experience in labor and employment matters, including FLSA and NYLL matters. Dictor Decl. ¶ 22.

Using the information provided by Defendants, Plaintiffs' Counsel compiled an analysis of damages for each of the causes of action in the case. On November 2, 2018, Plaintiffs' Counsel provided a confidential twenty-two-page memorandum to the mediator with supporting spreadsheets, including an explanation of the methodology for calculating each category of damages as well as the damages for each Class Member. Dictor Decl. ¶ 24.[4] Defendants' counsel

---

[4] The data provided by Defendants at the time of mediation was anonymized for non-plaintiffs, but included individual employee identification numbers that allowed for calculation of the estimated individual and class-wide damages.

also made a confidential written submission to the mediator. *Id*. The parties held a day-long

mediation before Carol Wittenberg at JAMS on November 9, 2018, attended by all four

Plaintiffs. Dictor Decl. ¶ 25.

       As a result of Ms. Wittenberg's efforts, an agreement on a settlement amount and other

settlement parameters was reached, subject to resolution of several issues and execution of a

Memorandum of Understanding. Dictor Del. ¶ 26. These issues included inclusion in the

proposed class of employees hired after the case was filed, and certification by the NLRB that

Defendants were in compliance with the settlement in that matter. *Id.* Negotiations to resolve

these and other issues continued until execution of the Memorandum of Understanding by all

parties on November 26-27, 2018. Dictor Decl. ¶ 27. Thereafter, the terms were embodied in the

complete Settlement Agreement, dated October 14, 2019, attached as Exhibit 1 to the Dictor

Decl.[5]

       On November 7, 2019, Plaintiffs filed their Motion for Preliminary Approval of

Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel

as Class Counsel, and Approval of Proposed Notices of Class and Collective Action Settlement.

ECF Doc. No. 170.

       On September 29, 2020, the Court took the first step in the settlement approval process

by preliminarily approving the revised Settlement Agreement, conditionally certifying the

proposed Rule 23 and FLSA settlement classes, approving the four Plaintiffs as the Class

Representatives, and appointing Eisner & Dictor, P.C. and Roger J. Bernstein as Class Counsel.

ECF Doc. No. 175 (Preliminary Approval Order).

---

[5] As addressed in Plaintiffs' preliminary approval motion, following execution of the Memorandum of Understanding, Plaintiffs needed additional information to verify the date on which Defendants ceased certain alleged unlawful practices. See Dictor Decl. ¶ 27-28. Defendant provided that information on March 25, 2019. Dictor Decl. ¶ 29.

The Court-approved Notice that was sent to Class Members informed them in detail of the overall Settlement Amount, the time period to which it applies, and the nature of the claims being settled, that is, incorrect break time deductions, diversion of gratuities to Sweet Shop employees, diversion of gratuities from party contracts, inaccurate wage notices, and inaccurate wage statements. It advised Class Members of their right to exclude themselves from the settlement and of their right to object to the settlement and explained how to do so. Schwermer-Sween Decl. ¶ 6, Ex. A (Notice of Class & Collective Action Settlement) at ¶¶ A, F, L, K, M, N. It stated that portions of the Settlement Fund would be used to pay Class Counsel's approved fees of up to 33-1/3% of the Settlement Amount, costs, and service payments of $5,000.00 to each of the Class Representatives in recognition of their service to the Class. *Id.*, Ex. A at ¶ G.

## II.  SUMMARY OF THE SETTLEMENT TERMS

### A.  The Settlement Fund

Pursuant to the Settlement Agreement, Defendants will pay the sum of $1,450,000 into a "Settlement Fund" to resolve the Litigation. Dictor Decl. ¶ 31. The Settlement Fund will constitute payment in full of all alleged damages, interest, liquidated damages, penalties, attorneys' fees, costs and disbursements, administration costs, and any other damages, costs, or expenses arising out of or alleged in the Litigation. *Id.* However, it does not cover employer-side payroll taxes, which are borne by Defendants. *Id.*; Dictor Decl. Ex. 1, at ¶ 1.27.

The Settlement Agreement—drafted before COVID 19 and other delays were contemplated—provides that Defendants will cause half the Settlement Fund to be paid to the Settlement Administrator on: (a) the date thirty (30) days after the entry of a Final Approval Order (as defined in Section 1.13 of the Settlement Agreement) if there are no appeals; or (b) if there is an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval (the "Effective Date"). Dictor Decl. ¶ 33, Ex. 1 at ¶

1.11. Defendants are to cause the second half of the Settlement Fund to be paid to the Settlement Administrator on the earlier of "six months after payment of the first half or December 26, 2019, as long as this date is at least 30 days after final approval of this settlement by the Court." Dictor Decl., Ex. 1 ¶ 3.1(D). Given the passage of time past the December 26, 2019 date, the second payment is now due at the same time as the first. In the event Defendants do not meet these payment deadlines, there will be a 30-day notice period and opportunity to cure. Dictor Decl., Ex. 1 ¶ 3.6. In the event of a failure to cure before the expiration of that period, the Court may assess interest at the New York State interest rate and enter judgment against both Defendants for the unpaid amount plus interest since the date of default. *Id.*

The Net Settlement Fund after payment of Court-approved attorneys' fees, Service Awards, costs and disbursements will be allocated among the Rule 23 Class and FLSA Collective Class (together the "Class Members") based on the Allocation Formula in Paragraph 3.4 of the Settlement Agreement. Dictor Decl. ¶ 36. The Allocation Formula takes into account the number of weeks that each server worked as well as the damages applicable to the type of particular FLSA/NYLL violations taking place during that server's period of employment. Dictor Decl. ¶¶ 39-58.

As to reversion of unclaimed funds, if checks cannot be delivered to some Class Members the Settlement Agreement provides that these funds will *not* revert to the employer Defendants, unless Class Counsel fails to advise the Court of the unclaimed funds within the time period set forth in the Settlement Agreement, or if the Court rejects Class Counsel's proposal to distribute the unclaimed funds to a non-profit organization. Dictor Decl., Ex. 1 ¶ 3.1(H). Plaintiffs' Counsel will advise the Court and Defendants' counsel as to the number of class members that have not received class action notices and settlement checks, or that have

received but have not deposited settlement checks. *Id.* At that point Plaintiffs' Counsel shall propose for the Court's consideration a plan for distribution of any unclaimed funds, either in an additional distribution to the Class Members who have received and deposited checks, or to an appropriate *cy pres* non-profit organization. *Id.*

### B. Settlement Classes

There are two overlapping classes: the FLSA Collective Class and the Rule 23 Class. There are 251 members of the Rule 23 Class, which includes the 91 Opt-in Plaintiffs constituting the Collective Class. *Id.* The members of the Rule 23 Class and of the FLSA Collective Class are being treated identically under the settlement allocation formula.[6] *Id.*

### C. Releases; Counterclaims

The Settlement Agreement provides that every Opt-In Plaintiff and every Rule 23 Class Member who does not timely opt out of the settlement, will release Defendants only from the claims asserted in the Amended Complaint and from the retaliation claims that the Plaintiffs sought leave to add. Dictor Decl., Ex. 1 at ¶ 4.1. The four Class Representative for whom a service payment is proposed in the Settlement Agreement will sign a general release in exchange for their Service Awards. Dictor Decl., Ex. 1 at ¶ 4.1(C). The basis for these Service Awards is set out in Part III(G) below. The Defendants' counterclaims will be dismissed with prejudice. Dictor Decl., Ex. 1 at ¶ 4.1(D).

### D. Attorneys' Fees and Costs

While the class notice advised the Class that Plaintiffs may apply for up to one-third of the Settlement Amount as attorneys' fees and costs, as set forth in Part III(D) below Plaintiffs'

---

[6] The FLSA class was only for two or at the most three years of FLSA claims, while the Rule 23 Class covers six years of NYLL claims. Due to the parallels between FLSA liability and NYLL liability, all servers are being compensated under the same formulas regardless of whether they are part of the FLSA class in addition to being part of the NYLL class. Dictor Decl. ¶ 37; *see also* ECF Doc. No. 175 at 9.

Counsel are applying for 30% of the Settlement Amount, plus reimbursement of reasonable out-of-pocket costs in the amount of $5,597.61. *See infra,* Part III(F); Dictor Decl. ¶ 87, Ex. 1 at ¶ 3.2. Moreover, as discussed below, the Claims Administrator's fees will be paid from the fees awarded to Plaintiff's Counsel.

### E.  Claims Administrator

With the Court's approval, the Parties have selected Rust Consulting as the third-party settlement Claims Administrator to send the class notice to Class Members and distribute checks to Class Members in the amounts determined by the method of computation set forth in the Settlement Agreement. Dictor Decl. ¶ 36, Ex.1 at ¶¶ 1.26, 2.2. At the request of Plaintiffs' Counsel, the Claims Administrator will be paid for its services from the fees awarded to Plaintiffs' Counsel and not from the Settlement Fund. Dictor Decl. ¶ 32; *see also* Dictor Decl., Ex.1, at ¶ 1.26.

### F.  Service Awards

In addition to their payments under the allocation formula, Plaintiffs are applying for Service Awards of $5,000 each for the four Class Representatives. Dictor Decl. ¶ 55, Ex. 1 at ¶ 3.3. These Service Awards are intended to compensate the Class Representatives for the services they performed for the Class and Collective Action Class, for the time they spent assisting with the Litigation including the mediation and preparation therefor, and for the risks they assumed in connection with this Litigation. *Id.* The requested Service Awards are discussed in Part III(G) below.

### G.  Class Action Settlement Procedure & Schedule

In the Court's Preliminary Approval Order, the Court approved the schedule for consideration of final settlement approval. *See* ECF Doc. No. 175, as amended by ECF Doc.

Nos. 177, 180. The first four steps in the schedule have been completed. The following steps

remain:

> (5) The Court will hold a telephonic final fairness hearing on February 24, 2021, at 10:00 a.m. The parties shall enter the conference by dialing 1-888-363-4749 and entering access code 2682448.

> (6) If the Court grants Plaintiff's motion for final approval of the Settlement Agreement, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be the date thirty (30) days after entry of such Order.

> (7) If rehearing, reconsideration or appellate review are sought, the "Effective Date" shall be the day after all appeals are resolved in favor of final approval.

> (8) The Claims Administrator will disburse settlement checks to the Rule 23 Class members and FLSA Collective Class members, Class Counsel's attorneys' fees and expenses to Class Counsel, the Service Awards, and the Settlement Administrator's fee as provided in the Settlement Agreement.

> (9) The parties shall abide by all terms of the Settlement Agreement.

ECF Doc. No. 175 at 14.

## III. ARGUMENT

### A. The Settlement Class Meets the Legal Standard for Class Certification.

When evaluating a proposed class action settlement, courts must first examine whether it

is proper to certify the settlement class. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir.

2006); *see, e.g., Melito v. Am. Eagle Outfitters, Inc.,* 14-CV-2440 (VEC), 2017 WL 3995619, at

*7 (S.D.N.Y. Sept. 11, 2017)*, aff'd in part, appeal dismissed in part sub nom. Melito v Experian

*Mktg. Sols., Inc.,* 923 F3d 85 (2d Cir. 2019). This Court has provisionally certified the Rule 23

Class and the FLSA Collective Class, finding that the proposed Rule 23 class meets the four

requirements of Rule 23(a) and that Rule 23(b) is satisfied, in that "'questions of law or fact

common to class members predominate over any questions affecting only individual members,'

and class action adjudication 'is superior to other available methods for fairly and efficiently

11

adjudicating the controversy.'" ECF Doc. No. 175 at 11 (citations omitted). The Court has also determined that the requirements for an FLSA collective action are satisfied. *Id.* at 11-12. Since that time, no Class Member has opt-ed out of the Settlement, nor have there been any objections. Schwermer-Sween Decl. ¶¶ 12-13.

"[N]o facts have been presented . . . to indicate that [the] preliminary determination [to certify a settlement class] was incorrect." *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 WL 4996248, at *3 (S.D.N.Y. Oct. 7, 2014). Since the settlement class continues to meet all of the Rule 23 and FLSA requirements, final class certification is appropriate.

**B.  The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). "To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *3 (S.D.N.Y. Jan. 29, 2014) (Torres, J.) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). In this District, courts determine substantive fairness – whether the settlement's terms are fair adequate and reasonable— according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the recently amended Rule 23 sets forth five considerations for particular attention, courts in this District address these factors "in tandem with the Second Circuit's *Grinnell* factors." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (citation omitted).

Courts examine procedural and substantive fairness considering the "strong judicial policy in favor of settlement" of class action suits. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). However, when a settlement is negotiated prior to class certification, such as here, it is "subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85. At this higher level of scrutiny, the applicable procedural and substantive considerations support approval of the proposed settlement.

### 1. The Proposed Settlement Is Procedurally Fair.

Courts apply a "presumption of fairness, adequacy and reasonableness" to a "a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quotation omitted). "Absent fraud or collusion," courts should not substitute their "judgment for that of the parties who negotiated the settlement." *Flores*, 2014 WL 321831, at *4) (citation omitted).

In granting preliminary approval of the Settlement, the Court found that the Settlement Agreement "is the result of arm's length negotiation between the parties who were aided in reaching agreement by a neutral mediator." ECF Doc. No. 175 at 7. The settlement was reached through negotiation between experienced counsel with the assistance of an experienced third-party labor and employment mediator, after a thorough investigation and several years of litigation and other adversarial hearings. Dictor Decl. ¶¶ 22, 60, 64-66.

The extensive informal discovery and the proceedings before the NYS-DOL and NLRB allowed the parties to make a well-informed assessment of the strength of their claims and defenses and negotiate a settlement on the basis of these assessments. Such negotiations raise a presumption that the settlement satisfies the requirements of due process. *Visa*, 396 F.3d at 116-17 (settlement presumptively procedurally fair where "a consensual resolution was achieved

13

based on full information and honest negotiation between well-represented and evenly balanced parties"); *D'Amato*, 236 F.3d at 85-86 (settlement procedurally fair where it was based on arm's length negotiations by experienced counsel); ECF Doc. No. 175 at 7.

### 2.  The Proposed Settlement Is Substantively Fair.

In evaluating a class action settlement, this Court and others in the Second Circuit continue to consider the nine factors set forth in *Grinnell. See Christine Asia Co.,* 2019 WL 5257534, at *9. The *Grinnell* factors are: (1) "the complexity, expense and likely duration of the litigation;" (2) "the reaction of the class to the settlement;" (3) "the stage of the proceedings and the amount of discovery completed;" (4) "the risks of establishing liability;" (5) "the risks of establishing damages;" (6) "the risks of maintaining the class action through the trial;" (7) "the ability of the defendants to withstand a greater judgment;" (8) "the range of reasonableness of the settlement fund in light of the best possible recovery;" and (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." 495 F.2d at 463. Here, eight of the nine *Grinnell* factors weigh in favor of settlement, with the remaining factor (Factor 7) remaining neutral.

### (a)  *Grinnell* Factor 1: Further Litigation and Trial Would Be Complex, Costly, and Long

The first *Grinnell* factor supports final approval because litigation through trial would be complex, expensive, and long. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them*." In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Particularly in wage and hour actions like this one, involving multiple claims under the FLSA and NYLL and different but overlapping time periods, protracted litigation will be costly and burdensome, including motion practice and

14

potential appeals over class certification. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) ("Litigation through [a wage and hour class action] trial would be complex, expensive and long.").

Throughout the litigation, the parties have engaged in significant discovery and motion practice. If final certification of the class is not granted, then the individual class members will can bring their own separate actions (and many are likely to do so). *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *7 (S.D.N.Y. Apr. 16, 2012) (noting that "litigating the claims of hundreds of putative class members would undoubtedly yield expensive litigation costs that can be curbed by settling the action"). Granting final certification and approval of the Settlement Agreement provides significant relief to Class Members promptly and efficiently and avoids more costly litigation. Thus, the first *Grinnell* factor weighs in favor of final approval.

### (b) *Grinnell* Factor 2: The Reaction of the Class Has Been Positive

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). In fact, a lack of objections to the settlement is compelling evidence that the Class's reaction to the settlement has been positive and that the Class favors settlement. *See id*. at 374.

As noted in the Declaration of Sara Schwermer-Sween, Project Manager for the Settlement Administrator, there have been "zero (0) written exclusion requests" and "zero (0) objections" to the Settlement received to date. Schwermer-Sween Decl. ¶¶ 12-13. The last date for Class Members to mail objections or opt-out exclusions was January 12, 2021. *See* Schwermer-Sween Decl., Ex. A at ¶ M.

Thus, the second *Grinnell* factor weighs in favor of approval.

15

   **(c)** *Grinnell* **Factor 3: This Proceeding Has Progressed Through Multiple Stages and Enough Discovery Has Occurred to Allow for a Responsible Resolution of the Case**

As previously discussed, the parties have completed substantial negotiated discovery. To satisfy the third *Grinnell* factor, the parties need not have engaged in extensive discovery if they "have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement." *In re Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The parties have easily surpassed this standard. During the litigation, Plaintiffs' Counsel have reviewed and analyzed thousands of pages of documents provided by Defendants. Dictor Decl. ¶¶ 16-21. By July 5, 2018, Defendants provided their complete, electronically stored point-of-service timeclock information (from a system called "POSitouch") for all servers. Dictor Decl. ¶ 18. The information includes (i) the dates of employment for all servers employed during the class period; (ii) the number of hours worked by each server for each shift and week during the class period; (ii) the hourly rates at which each server was compensated for each week of the class period; and (iii) an accounting of all "handling fees" retained by the Defendants during the class period that Plaintiffs contend constitute unlawfully withheld gratuities. *Id.* Defendants also provided hundreds of pages of party contracts, credit card receipts, and other related documents, which Plaintiffs' Counsel utilized to review the Defendants' accounting for accuracy. *Id.* Further, due to the related matters before the NYS-DOL, Plaintiffs' Counsel were able to examine several representatives of Ellen's under oath concerning the employment practices at issue in this case and gather relevant information and admissions. Dictor Decl. ¶¶ 54. Thus, the third *Grinnell* factor weighs heavily towards settlement.

### (d) *Grinnell* Factors 4 & 5: Plaintiffs Would Face Risk As to Liability and Damages Determinations If the Case Proceeded

Plaintiffs believe their case is strong; however, like all litigation, it is subject to considerable risk. *See Visa*, 396 F.3d at 118. The Court should weigh these litigation risks against the certainty of the Settlement Agreement. *See Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 WL 4830949, at *8 (S.D.N.Y. Sept. 10, 2013). Claims regarding wage and hour violations—including tip misappropriation claims—involve significant litigation risks because "of their fact-intensive nature." *Id*. Despite the extensive discovery, Plaintiffs would again have to demonstrate specific violations of the relevant statutes. *See id*. As to establishing the amount of damages, there is little documentary evidence as to the time periods during which some of the tip-credit violations occurred, hence the damages amount could be legitimately challenged.

Furthermore, at trial the Plaintiffs might well have to defend against counterclaims brought by the Defendants, even though at least some of these counterclaims have already been litigated or disposed of at both the NLRB and the NYS-DOL. By contrast, the Settlement Agreement dismisses these counterclaims with prejudice, ensuring no further risk to the Plaintiffs or Class Members. *See* Dictor Decl., Ex.1 at ¶ 4.1(D). Thus, the fourth and fifth *Grinnell* factors weigh in favor of settlement.

Moreover, the chance that the class may have received a higher award if the case was fully litigated is not a "reason to not to approve the settlement." *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted). The proposed settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003). Given the inherent risks of litigation, it is proper for the parties "to take the bird in the hand instead of a

17

prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted).

### (e) *Grinnell* Factor 6: Establishing and Maintaining the Class Through Trial Presents Risk

The process of obtaining class certification and maintain class and collective certification subjects Plaintiffs to "considerably more risk." *Vaccaro v. New Source Energy Partners L.P.*, No. 15 cv 8954 (KMW), 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) (internal quotation marks omitted). Application for such certification—without settlement—would be contested by the Defendants. Furthermore, if this Court granted a certification motions, the Defendants would likely either pursue an interlocutory appeal under Rule 23(f) or move to decertify the class. *See Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2017 WL 1155916, at *5 (S.D.N.Y. Mar. 27, 2017). Defendants' counsel have also advised that they would seek to depose each of the individual Opt-In Plaintiffs if the case were to proceed through discovery, which could identify individual circumstances undercutting a finding of predominance of common issues. Dictor Decl. ¶ 64. The Settlement Agreement avoids these risks, guaranteeing payments on a class-wide and collective action-wide basis to all eligible participants. Thus, the sixth *Grinnell* factor favors settlement. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, 2011 WL 9380874, at *4 (S.D.N.Y. Sept. 21, 2011) (finding "[t]he risk of obtaining and maintaining class status throughout trial" in a class and collective action wage and hour settlement "weigh[ed] in favor of final approval").

### (f) *Grinnell* Factor 7: Defendants' Ability to Withstand a Greater Judgment Is Not Determinative

Although Defendants perhaps could have paid a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *7

(S.D.N.Y. June 7, 2011) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation marks omitted)). When a settlement provides for prompt payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" such settlements should be found reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, Master File No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)). While Plaintiffs' Counsel have not conducted substantial investigation into the Defendants' financial wellbeing, Plaintiffs' Counsel are mindful of the fact that Defendants' operate a restaurant that is heavily reliant on tourism and has been impacted by the COVID-19 pandemic.

### (g) *Grinnell* Factors 8 & 9: The Settlement Fund is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation

The final two Grinnell factors—"the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation"—also weigh in favor of final approval. Reasonableness does not turn on the "use of a mathematical equation yielding a particularized sum." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) (citation omitted); *see also Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Rather, the "range of reasonableness" reflects "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa*, 396 F.3d at 119. Courts should not judge the settlement

amount in comparison with the "possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 CM, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (citation omitted).

As previously mentioned, and as detailed in Plaintiffs' submission in support of preliminary approval, the Settlement Agreement creates five distinct categories of damages.[7] The damages claims in Categories 1 through 3 are for wages and gratuities allegedly deducted/withheld. The Settlement Fund has been allocated so that these claims are paid in full (before fees and costs). Dictor Decl. ¶¶ 40, 42, 46, 70.[8] Category 4 Class Members stand to receive nearly 70%, , of the improperly taken tip credits that constitute the damages in this category. *See id*. ¶ 49. As to the wage statement and wage notice penalties in Category 5, the lower percentage recovery in this category (27.3%) reflects a decision to allocate funds first to recovery of unpaid wages and gratuities so that lost income is fully restored. *See id*. The lower allocation to the wage notice and wage statement penalties is appropriate as such penalties are

---

[7] Category 1 pertains to the straight time and overtime wages that went unpaid as a result of Defendants' alleged practice of automatically deducting one half-hour from all Class Members' shifts that were six and one-half hours or longer. Dictor Decl. ¶ 38. Category 2 claims are for damages for the alleged diversion of gratuities to tip-ineligible employees. From the Defendants' records, Plaintiffs' counsel were able to determine the total number of shifts each Class Member worked during the period in which the practice occurred, between January 1, 2013 and March 15, 2016. Dictor Decl. ¶ 42. Category 3 is based on an alleged diversion of gratuities from party/banquet contracts that resulted from Defendants' retention of so-called "handling fees." Dictor Decl. ¶ 45. Category 4 is for claims for tip credits applied against the hourly wages of Class Members which Plaintiffs contend were impermissible because of the diversion of tips to ineligible employees. Dictor Decl. ¶ 49. Category 5 is allocated to pay Class Members for penalties arising out of the alleged failure to provide accurate wage statements and wage notices as required by NYLL § 195. Dictor Decl. ¶ 51.

[8] The adequacy of a class action settlement amount is assessed before accounting for attorney's fees and costs. See, *e.g.*, *In re Patriot Natl., Inc. Sec. Litig.*, 828 Fed. App'x 760, 762 (2d Cir. 2020) (upholding adequacy of "a $6.5 million settlement in this case, which is 6.1 percent of what appellees agree is the settlement class's maximum potentially recoverable damages, $106 million"); *Feliciano v. Metropolitan Transportation Authority,* 18-CV-00026 (VSB), ECF Doc. No. 99 at *2-3 (S.D.N.Y May 6, 2020) (Broderick, J.) (determining adequacy of settlement by comparing total settlement amount to potential recovery). This applies to all five categories of damages discussed herein.

intended to deter future violations by employers rather than to compensate for employee losses. This recovery provides far more than "a fraction of the potential recovery" contemplated under *Grinnell*. *See* 495 F.2d at 455.[9]

Examination of the amounts and distribution of Class Member recoveries across the time period is also informative. The average award from the Settlement Fund is $5,764.75. Over half of the Class Members (54.1%, or 136 present and former employees) will receive an award between $2,000 and $9,999. Almost a quarter of the Class Members (24.3%, or 61 present and former employees) will receive between $10,000 and $20,000; 11.1% of the Class Members (28 present and former employees) will receive between $1,000 and $1,999 and costs, and 10.3% of the Class Members (26 present and former employees) will receive less than $1,000. As might be expected, the amount of each Class Member's recovery is highly correlated with duration of employment. Plaintiffs' Counsel's review of the recoveries shows that the low amounts invariably go to individuals who worked a short period of time, and the high amounts go to those with the longest period of employment. (The termination of some practices such as concealed break time deductions and the advent of new rights under the NYLL also affected the amounts recovered by Class Members who worked in different time periods.) The recoveries are not only substantial, particularly for wage and hour class action or collective action cases; they are also appropriately distributed across among the Class Members.

Therefore, the final two Grinnell factors also weigh in favor of settlement approval.

---

[9] The recovery per Class Member amount has been adjusted slightly since the filing of the motion for preliminary approval of the Settlement Agreement because defendants recently advised that four individuals on the class list they had provided were employed at a different restaurant, not at Ellen's Stardust Diner. (Although further changes in class membership are not expected, Plaintiffs' Counsel will advise the Court if any do occur. Any change in class membership will have a de minimis effect on individual recoveries given the size of the class.)

**C.   Approval of the FLSA Settlement Is Appropriate Under Federal Law**

This Court has already preliminarily approved the Settlement Agreement as meeting the

applicable standards. See ECF Doc. No. 175 at 9-12. As noted therein, Courts in this District

have routinely found that "[t]he standard for approving an FLSA settlement is significantly lower

than for a Rule 23 settlement because FLSA collective actions do not implicate the same due

process concerns as Rule 23 actions." *Id.* (quoting *Davenport v. Elite Model Mgmt. Corp.,* No.

1:13-CV-01061-AJN, 2014 WL 12756756, at *8 (S.D.N.Y. May 12, 2014)). Since, as discussed

above, the Settlement Agreement satisfies Rule 23's higher standard, it also satisfies the FLSA

collective action standard.

**D.   Counsel Are Entitled to a Reasonable Fee of 30% of the Settlement Fund.**

Plaintiffs' Counsel are entitled to reasonable attorneys' fees to compensate them for their

work recovering unpaid wages on behalf of the class. As noted above, the Settlement Agreement

provides that Plaintiffs' Counsel may seek an award of attorneys' fees of up to 33-1/3% of the

$1.45 million Settlement Fund plus reimbursement of their litigation costs. Dictor Decl., Ex. 1 at

¶ 3.2 Here, Plaintiffs' Counsel are requesting an award of 30% of the Settlement Fund in light of

current economic circumstances. *See* Dictor Decl. ¶ 76. Plaintiffs' Counsel submit that a 30% fee

is appropriate in this case for the many reasons noted below, including *inter alia* the time and

labor expended by counsel, the quality of representation, and public policy considerations.[10]No

---

[10] Eisner & Dictor, P.C. has been routinely awarded fees of 33-1/3% of gross recovery or slightly less
in wage and hour litigation in this District. *See e.g., Dela Vega v. Kastenberg*, 18-cv-10910-RWL, ECF
Doc. No. 18 (S.D.N.Y. July 2, 2019) (approving fees of 32.65% of gross recovery); *deRodriguez v. Lenox
& 132nd Food Corp.*, 17-cv-02439-JLC, ECF Doc. No. 39 (S.D.N.Y. Apr. 17, 2018) (approving
attorneys' fees of 29.11% of net recovery, which were almost twice the lodestar); *Armenta et al v. Dirty
Bird Group LLC.*, 13-CV-04603-WHP, ECF Doc. No. 67 (S.D.N.Y. Aug. 1, 2014) (where the 33⅓%
contingency fee proposed was in excess of the lodestar); *Redzepagic v. Hammer*, 14-CV-9808-ER-GWG,
2017 WL 1951865 (S.D.N.Y. May 8, 2017); *Reyes et al v. Magic Touch Construction Corp. et al*, 14-CV-
03759, ECF Doc. No. 41 (S.D.N.Y. Oct. 7, 2015). Likewise, Eisner & Dictor, P.C. has been routinely
awarded fees of 33-1/3% of gross recovery or slightly less in wage and hour litigation in the Eastern
District of New York. *See, e.g., Aguilar v. Mangal Kebab*, 16-CV-5748-RLM, ECF Doc. No. 36

Class Member has objected to the requested attorneys' fees or expense reimbursement. The lack of objections supports the reasonableness of the requests and weighs in favor of approving them. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) (finding that a lack of objections from the class "len[t] support for approval of the [fee] award" where the court approved a multiplier of 2.93 times the lodestar); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011) (absence of objections to a fee award is a factor weighing in favor of granting the award).

The request for attorneys' fees of 30% of the Settlement Fund is also within the range approved by courts, including this one, in similar cases. *See Hamsher v. The Scotts Company, LLC.*, 17-CV-04206 (VSB), ECF Doc. No. 58 at *2 (S.D.N.Y Feb. 10, 2020) (Broderick, J.) (awarding attorneys' fees equal to one-third of the settlement fund); *Baten v. Mr. Kabob Rest. Inc.*, 16-CV-9559 (VSB), 2019 WL 11274597, at *2 (S.D.N.Y. Oct. 18, 2019) (Broderick, J.) (awarding attorneys' fees equal to one-third of the settlement fund); *Escobar v. Pret A Manger (USA) Limited*, 1-17-CV-05227 (VSB), 2019 WL 11272914 (Feb. 14, 2019) (Broderick, J.) (awarding attorneys' fees equal to one-third of the settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding that one third of the settlement fund in a wage and hour class action is reasonable and "consistent with the norms of class litigation in this circuit") (quotations omitted).

---

(E.D.N.Y. Oct. 25, 2017); *Gacevic v. 1485 East Sixteenth Owners Corp.*, 1:16-cv-03696-VMS, ECF Doc. No. 24 (E.D.N.Y. March 9, 2017); *Tankamash v. Corato I Pizza & Restaurant Corp.*, 1:15-cv-06093-RML, Order Granting Motion for Settlement (E.D.N.Y. Jan. 18, 2017); *Lecon v. Bayfruit Corp. et al.*, 1:16-cv-00877-RML, ECF Doc. No. 22 (E.D.N.Y. 2016) (approving 33-⅓% of net recovery); *Diaz v. Waverly Meat & Grocery Inc.*, 1:15-cv-01799-MDG, ECF Doc. No. 19 (E.D.N.Y. January 25, 2016); *Aguilar v. Mangal Kebab*, 16-CV-5748-RLM, ECF Doc. No. 36 (E.D.N.Y. 2017). Roger Bernstein has also been awarded one-third of the settlement fund in wage and hour litigation in conjunction with Eisner & Dictor in *Armenta, supra.*

Of the two methods for awarding attorneys' fees, the "trend in this Circuit is toward the percentage method." *Visa,* 396 F.3d at 121. This is because this type of fee "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Id*. (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)); *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6888488, at *9 (E.D.N.Y. Dec. 16, 2019) (noting the trend in the Second Circuit and highlighting the interest alignment).

In addition, because this type of claim is a small claim on an individual basis, it can only be prosecuted through private aggregate litigation and thus relies on "private attorney[s] general" who need compensation. *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338-39 (1980). Without this compensation, wage and hour abuses would never be remedied because "attorneys would be unwilling to take on the risk." *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010). Furthermore, "[a]dequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL." *Id*. Thus, a percentage of the common fund is preferred because it provides adequate compensation while also "spreading the cost of the litigation to its beneficiaries." *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir. 2010) (Kaplan J. concurring).

Courts in this Circuit prefer the percentage method over the alternative lodestar method— wherein the fee is calculated by multiplying the hours reasonably expended against a reasonable hourly rate—for many reasons, including the interest alignment discussed above. *See Visa*, 396 F.3d at 121. Here, Plaintiffs' Counsel negotiated a large settlement to Class Members' great

benefit. A percentage-of-the-fund fee award will encourage other plaintiffs' lawyers to do the same.

In addition, the percentage method is preferred because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *Johnson v. Brennan*, No. 10 Civ. 4712 CM, 2011 WL 4357376, at *14 (S.D.N.Y. Sept. 16, 2011) (quoting *In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393, 397 (S.D.N.Y.1999)); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded.").

The percentage method complies with the Second Circuit's *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany County Board of Elections* decision which proscribes that a "presumptively reasonable fee" is one that "a reasonable, paying client would have paid. *Arbor Hill,* 522 F.3d 182, 191 (2d Cir. 2008). Courts in this District have used the *Arbor Hill* rational in a closely parallel common fund fee petition context. *See, e.g., Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (applying the *Arbor Hill* rational when awarding one-third of a common fund).

Lastly, the percentage method conserves judicial efforts and resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999) (quoting *Court Awarded Attorney Fees*, 108 F.R.D. 237, 258 (1986)). Meanwhile, the disfavored lodestar method resurrects "the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits," wasting the Court's time and resources. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000). Nevertheless, the Second Circuit has

suggested that district courts use the lodestar to ensure the percentage requested is reasonable but the Court need not "exhaustively scrutinize[]" the hours documented by counsel. *Id*.

The Second Circuit, in *Goldberger*, articulated six factors that courts should consider when determining the reasonableness of fee applications. *See id*. These are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id*. Each factor weighs in favor of approving the fee request.

### 1. Plaintiffs' Counsel's Time and Labor.

As detailed in Plaintiffs' submissions in support of preliminary approval, Plaintiffs' Counsel expended significant effort to achieve the $1.45 million settlement. *See generally*, ECF Doc. No. 170. Before initiating this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Dictor Decl. ¶ 3. Plaintiffs' Counsel informed themselves about Defendants' computerized system for food and drink sales ("POSitouch"), about the functions of the non-tipped employees, and about the Defendants' alleged diversion of party gratuities, among other things. *Id*. Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs to gather this information. *Id*.

While litigation was ongoing before this Court, the NLRB began to consider unfair labor practice ("ULP") charges against Ellen's filed by over thirty servers alleging, *inter alia*, that they were terminated by Defendants in retaliation for engaging in protected concerted activities. Dictor Decl. ¶¶ 5, 11. The discriminatees in the NLRB matter were Class Representatives, Opt-In Plaintiffs and Class Members. Dictor Decl. ¶¶ 4, 11, Ex. 3. As a defense to the allegations of retaliatory discharge brought before the NLRB, Ellen's relied upon the same allegations that form the basis of their counterclaims in this action: they argued that employees engaged in theft through manipulation of the computerized system for handling customer paychecks. *Id*.

Defendants also sought to prove these allegations in NYS-DOL hearings in which they contested certain Plaintiffs' claims for unemployment insurance benefits on the basis that said Plaintiffs were terminated for misconduct consisting of theft. Dictor Decl. ¶¶ 5, 54-55, Plaintiffs' Counsel successfully represented the discriminatees at the NLRB and the individual claimants in their NYS-DOL unemployment proceedings. This representation was relevant to the instant action because the Defendants were attempting to create a record concerning the underlying facts of the same allegations of theft interposed here. The proceedings also gave Plaintiffs' Counsel an early opportunity to cross-examine Defendants' witnesses, including Ellen's managers who had direct knowledge of the employer's wage, gratuity and record-keeping practices. The proceedings also provided Plaintiffs' Counsel with a forum to cross-examine Ellen's bookkeeper and their expert forensic witness, Charles Reisner, both of whom purported to have evidence of the alleged theft.

The sworn testimony obtained during the five hearing sessions at the NYS-DOL provided Plaintiffs' Counsel with an early and efficient means of obtaining evidence that would not have been available until discovery and depositions had been completed in the instant matter. The Administrative Law Judges in the unemployment hearings for Plaintiff Miller and Opt-In Plaintiffs Azazi and Fidley found that Ellen's evidence failed to demonstrate any theft. Dictor Decl., Ex. 2 at 4-5. Defendants then proceeded to appeal all three of the ALJ decisions in the unemployment matters; and on appeal Plaintiffs' Counsel prevailed in sustaining the decisions of the ALJs rejecting the theft allegations. Dictor Decl. ¶ 5.

The advocacy by Plaintiffs' Counsel before the NLRB resulted in the NLRB issuing a Complaint, notwithstanding Defendants' contention that the terminations were in response to the alleged employee theft and that accordingly a complaint by the NLRB should not issue. On September 25, 2017, following the issuance of pre-trial subpoenas and motion practice,

Defendants settled the ULP charges with all 31 discriminatees on the eve of trial. The ULP

Settlement Agreement is attached to the Dictor Decl. as Exhibit 3. The agreement required

Ellen's to offer reinstatement with full backpay (in excess of $500,000 in total) to all 31 servers

that had been terminated. Thirteen of the 31 discriminatees returned to work following the

settlement. Pertinent to the Counterclaims and so-called Third-Party Claims in the instant matter,

Plaintiffs' counsel insisted that the NLRB Settlement contain terms requiring the Defendants to

abandon their theft allegations in their entirety before the NLRB and further "agree not to raise

or litigate, at the compliance stage, issues of, or issues related to, [Ellen's] alleged defense to the

discharge allegations, including, but not limited to, that employees engaged in a 'server scheme,'

'soda shopping,' 'soda shuffling' or similar conduct." *Id.* The NLRB Settlement further required

Defendants to "remove from [their] files all references to the discharges of [the thirty-one

discriminatees] . . . and notify them in writing that this has been done and that the discharge will

not be used against them in any way." Dictor Decl., Ex. 3 at 5. Plaintiffs' Counsel later took the

position that this settlement of the NLRB charges, together with the collateral estoppel effect of

the decisions in the ALJ in the unemployment proceedings, required Defendants to abandon the

"theft" issue altogether.

A small portion of the hours comprising the lodestar calculation consists of the time

Plaintiffs' Counsel have spent in hearings at the NYS-DOL over Plaintiffs' claims for

unemployment insurance benefits. Dictor Decl. ¶¶ 5, 54-55. These administrative hearings

produced evidence that was a very significant advantage in reaching a settlement in this action.

Dictor Decl. ¶¶ 5, 54. Courts in this circuit generally can consider prior or related administrative

proceedings if those proceedings were "useful and necessary to the litigation." *See Cullen v.

Fliegner*, 18 F.3d 96, 105-06 (2d Cir. 1994); *see also Kapoor v. Rosenthal*, 269 F.Supp.2d 408,

413 (S.D.N.Y. 2003) (awarding fees to attorneys for previous litigation). Furthermore, even in situations where the previous litigation did not directly advance the plaintiff's case—as the administrative hearings did here—courts in this District have granted fees for previous litigation where the plaintiff's counsel obtained testimony and evidence that could be used in the present action. *See Saber v. New York State Dept. of Fin. Services*, 115-CV-05944 (LGS), 2019 WL 4781781, at *5 (S.D.N.Y. Sept. 6, 2019), *report and recommendation adopted*, 15 CIV. 5944 (LGS), 2019 WL 4747670 (S.D.N.Y. Sept. 30, 2019) (granting fees for a disciplinary hearing that produced testimony later used at trial). Here, Plaintiffs' Counsel litigated at both the NLRB and the NYS-DOL, and evidence produced at the NYS-DOL adjudications, as well as their outcomes, showed that Defendants' purported counterclaims were unsuccessful and therefore facilitated settling this case. Thus, these contemporaneous proceedings were both "useful and necessary to the litigation" and resulted in evidence the parties used to reach the Settlement Agreement. *Cullen*, 18 F.3d 105-06; *Saber* 2019 WL 4781781, at *5.

Plaintiffs' Counsel have expended approximately 753.8 hours of attorney, paralegal, and staff member time—an aggregate lodestar of $290,880. Dictor Decl. ¶ 80. These hours are reasonable for a case of this scope and complexity. Dictor Decl. ¶ 81; Bernstein Decl. ¶ 5.

Generally, Plaintiffs' Counsel can expect that overseeing the final steps of the settlement process, including responding to class member inquiries and addressing any unused funds, will require an ongoing commitment of attorney time. *See Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (noting that any multiplier will decrease over time as Plaintiffs' Counsel will likely expend "significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the

settlement funds"). to the percentage fee will compensate Plaintiffs' Counsel for time that will be spent administering the settlement post-approval. Dictor Decl. ¶ 82.

### 2. Magnitude and Complexity of the Litigation.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See Goldberger*, 209 F.3d at 50-51. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them*." In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd sub nom. *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Particularly in complex wage and hour actions like this one, involving both federal and state statutory rights, protracted litigation is costly and burdensome, including motion practice and potential appeals over class certification. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) ("Litigation through [a wage and hour class action] trial would be complex, expensive and long."); *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) (noting that FLSA claims "typically involve complex mixed questions of fact and law" that "must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings").

There is no doubt this case is large in magnitude and complex in scope. Generally, courts have noted that the most complex type of FLSA case is the "hybrid action . . . where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)" such as the case brought here. *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *15 (E.D.N.Y. Apr. 11, 2016) (quoting *Siler v. Landry's Seafood House - N. Carolina, Inc.*, No. 13-CV-587 RLE, 2014 WL 2945796, at *9 (S.D.N.Y. June 30, 2014)). The instant matter was made further complicated by Defendants' interposition of Counterclaims and ostensible Third-Party

claims. Furthermore, as noted above, a large volume of employer records concerning shifts, time-clock information, and handling fees had to be analyzed. Plaintiffs' Counsel had to analyze all of the facts and information obtained through voluntary discovery to investigate Plaintiffs' allegations.

In view of the foregoing, the complexity of this case supports the award of slightly more than 30% of the Settlement Fund. *See Beckman*, 293 F.R.D. at 479-80 (noting that a hybrid FLSA/state law class actions are generally found to be complex enough to warrant a one-third of the settlement fund even without other agency litigation); *Parker* 2010 WL 532960, at *2 (awarding Plaintiffs' Counsel 33% of $745,000 fund in FLSA and NYLL restaurant case).

### 3. Risk of Litigation.

Despite these risks posed by taking on contingent class litigation, Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services. Dictor Decl. ¶ 83. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a substantial investment of time, energy, and resources. *Id.*

Moreover, Plaintiffs' Counsel never faced an easy path to a successful recovery in this case. As noted previously, Plaintiffs' Counsel had to engage in a fact-intensive discovery process to reach the Settlement Agreement. Furthermore, at trial Plaintiffs faced counterclaims brought by the Defendants and faced the burden of showing specific violations of the relevant statutes, over four years after the litigation began. Plaintiffs' Counsel also faced the risk that their efforts would be completely uncompensated if the class was subject to decertification following extensive discovery. Although Plaintiffs are confident that class certification is appropriate in this case, class certification is never guaranteed. *Cf. Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934 MAD/DEP, 2012 WL 6024572, at *4 (N.D.N.Y. Dec. 4, 2012) (noting that while a

defendant may agree to a class certification for settlement purposes, they likely would "vigorously oppose certification" outside of a settlement); *cf. Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366, 374-75 (S.D.N.Y. 2017) (denying Rule 23 class certification with respect to plaintiff's overtime, minimum wage and spread of hours claims). The proposed Settlement Agreement eliminates all of these risks and ensures recovery for the workers who choose to participate.

### 4.  Quality of Representation.

When assessing the quality of representation, courts review "the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 02 CIV. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007).

The quality of representation also supports Plaintiffs' Counsel's request. Plaintiffs' Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. *See id*. (factoring Plaintiffs' Counsel's extensive experience which contributed to settlement in supporting fee award constituting one-third of the settlement fund*); Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (noting that the experience of Plaintiffs' Counsel is one factor supporting an attorneys' fee award of approximately 40% of the fund).

Plaintiffs' Counsel have significant experience litigating wage and hour class and collective actions. Dictor Decl. ¶ 67-74. Furthermore, Plaintiffs' Counsel have been recognized as well-qualified and experienced employment and wage and hour attorneys. *See Leon-Martinez v. Cent. Cafe & Deli*, No. 15 CIV. 7942 (HBP), 2017 WL 2257352, at *3 (S.D.N.Y. May 22, 2017) (noting Eisner & Dictor P.C.'s well-preparedness, diligence, and zeal in preparing fair settlements); ECF Doc. No. 175 at 12 (noting Eisner & Dictor, P.C.'s investigatory work,

litigation efforts and experience in similar cases). In addition to his considerable experience litigating wage and hour claims, Benjamin Dictor's familiarity with the National Labor Relations Act and experience representing unions in administrative proceedings was useful in the representation of Plaintiffs before the NLRB and in obtaining a favorable result to the benefit of the instant action. Furthermore, the Court, when granting preliminary approval of the Settlement Agreement, found Plaintiffs' Counsel adequate and qualified. *See* ECF Doc. No. 175 at 12. Similarly, co-counsel Roger Bernstein maintains a diverse litigation practice. Bernstein Decl. ¶ 2. As a solo-practitioner, he represents a variety of clients across numerous areas of the law. *Id*. He has represented both employers and employees in issues of employment law. *Id*.

Finally, the result in this case demonstrates the quality of Plaintiffs' Counsel's representation of the Class Members. The $1,450,000 Settlement Fund is a substantial recovery given the risks previously identified. As described here and in Plaintiffs' submissions in support of preliminary approval, the Settlement Agreement creates five distinct categories of damages. *See* ECF Doc. No. 170 at 27; *see also* Dictor Decl. ¶¶ 38-53. Class Members in Categories 1 through 3 stand to recover nearly 100% of the wages and gratuities allegedly deducted/withheld, before fees and costs. *See* Dictor Decl. ¶¶ 40, 42, 46. Category 4 Class Members stand to receive nearly 70% of the applicable penalty, and Category 5 Class Members stand to recover almost 30% of the applicable penalty. *See id*. ¶¶ 49, 52.

### 5.  Attorneys' Fees in Relation to the Settlement Amount.

In wage and hour litigation, attorneys' fees equal to about one-third of the settlement are "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008); *see Westerfield v. Washington Mut. Bank*, No. 06-CV-2817(JMA), 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38,000,000 fund in class action

overtime suit); *Duchene v. Michael Cetta, Inc.,* No. 06 Civ. 4576(PAC), 2009 WL 5841175, at

*3 (S.D.N.Y. Sept. 10, 2009) (awarding Plaintiffs' Counsel 32.2% of $3,150,000 fund in FLSA

and NYLL tip misappropriation case); *see also deMunecas v. Bold Food, LLC*, 09 CIV. 00440

DAB, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting cases). When considering a

fee application, courts consider the entire fund created by Plaintiffs' Counsel's efforts, even

though unclaimed funds may revert to the defendant. *See, e.g., Acevedo v. Workfit Med. LLC*,

187 F. Supp. 3d 370, 383 (W.D.N.Y. 2016) (noting that attorney's fees of "one-third of the entire

settlement fund is reasonable," even when only 21% of eligible class members participate); *Diaz

v. E. Locating Serv.*, No. 10 Civ. 4082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010)

(finding fee requested reasonable under *Goldberger* when it was "based on the entire settlement

fund, including the amount that will revert to defendants"). In this case, reversion to the

Defendants is not automatic even if there are unused funds.

Plaintiffs' Counsel's fee should therefore be calculated as a percentage of the full amount

of money that the settlement made available to the class. In the Second Circuit, "attorneys' fees

awarded as a percentage of a common fund must be measured against the entirety of the fund

rather than the portion actually paid to the class members." *In re Nigeria Charter Flights Litig.*,

No. 04-CV-304, 2011 WL 7945548, at *5 (E.D.N.Y. Aug. 25, 2011), *report and

recommendation adopted,* No. 04-CV-304, 2012 WL 1886352 (E.D.N.Y. May 23, 2012); *see

Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (holding that the

district court erred by calculating the percentage of fund on basis of claims made against the fund

rather than on the entire fund created by counsel's efforts). "In *Masters,* the Second Circuit

expressly held that attorneys' fees awarded as a percentage of a common fund must be measured

against the entirety of the fund rather than the portion actually paid to the class members." *In re Nigeria Charter Flights Litig.* 2011 WL 7945548, at *5.

This is true no matter what happens to the surplus. *See id.* at *5, *9. Here, a reversion of unclaimed funds in the instant matter is very unlikely under the Settlement Agreement Plaintiffs' Counsel negotiated. If checks cannot be delivered to some Class Members, the Settlement Agreement provides that these funds will *not* revert to the employer Defendants, unless Class Counsel fails to advise the Court of the unclaimed funds within the time period set forth in the Settlement Agreement, or if the Court rejects Class Counsel's proposal to distribute the unclaimed funds to a non-profit organization. Dictor Decl., ¶ 57, Ex. 1 ¶ 3.1(H). The value Plaintiffs' Counsel provided via the creation of the settlement fund is not "diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010); *see also Masters*, 473 F.3d at 437 ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" and thus fees should be allocated based on "total funds made available, whether claimed or not").

### 6. Public Policy Considerations.

Public policy considerations weigh in favor of Plaintiffs' Counsel's requested fees. In rendering awards of attorneys' fees, the Second Circuit and district courts consider "the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The FLSA and the state wage and hour laws are remedial statutes designed to protect workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted); *Garcia v. Pasquareto*, 812 N.Y.S.2d 216, 217 (N.Y. App.

Term. 2004) ("[T]he public policy of the State of New York and the federal government is that the interest in enforcing wages and hours laws on behalf of all workers is paramount."). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *See Hall*, 2016 WL 1555128, at *16 (citations omitted).

Fee awards in cases like this serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future misconduct of a similar nature. *Deposit Guar. Nat'l Bank*, 445 U.S. at 338-39. This award of attorneys' fees helps ensure that lawyers will seek remuneration for these types of plaintiffs. *See Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8. Without adequate compensation for attorneys who bring small-scale wage and hour class actions, no one attorney would take that risk. *See id.*; *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014) ("setting fees too low or randomly will create poor incentives to bringing large class action cases"). As a result, every *Goldberger* factor supports awarding this fee to Plaintiffs' Counsel.

### E.   The Lodestar Cross Check Further Supports an Award to Plaintiffs' Counsel of 30% of the Settlement Amount.

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and use the lodestar method as a "baseline" or "cross check. *Goldberger*, 209 F.3d at 50. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hall*, 2016 WL 1555128, at *11. In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 (citation omitted). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id.*

Plaintiffs' Counsel's request for 30 % of the Fund, or $435,000, is less than twice the lodestar; the implied multiplier is 1.49.[11] While Plaintiffs' Counsel's request is above the lodestar, this Court regularly grants awards with much greater multipliers. *See Hamsher*, 17-CV-04206 (VSB) *at* *2 (Broderick, J.) (awarding a multiplier of 2.3x); *Baten*, 2019 WL 11274597, at *2 (Broderick, J.) (awarding a multiplier of 2.3x); *Escobar*, 17 Civ. 5227 (Broderick, J.) (awarding a multiplier of 4x); *see also Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six").

Eisner & Dictor, P.C. has been awarded similar multipliers in wage and hour litigation in Southern and Eastern Districts of New York. *See e.g.*, *Rodriguez v. Avondale Care Group*, LLC et al., No. 1:16-cv-03084-SN, ECF Doc. No. 88 (S.D.N.Y. Aug. 27, 2018) (awarding Eisner & Dictor, P.C. 33.3% of the settlement fund representing a 1.56 multiplier of the loadstar); *deRodriguez v. Lenox & 132nd Food Corp.*, 17-cv-02439-JLC, ECF Doc. No. 39 (S.D.N.Y. Apr. 17, 2018) (approving attorneys' fees representing a multiplier of 2.0 of the lodestar); *Armenta et al v. Dirty Bird Group LLC*., 13-CV-04603-WHP, ECF Doc. No. 67 (S.D.N.Y. Aug. 1, 2014) (where the 33⅓% contingency fee proposed was in excess of the lodestar); *Diaz v. Waverly Meat & Grocery Inc.*, 1:15-cv-01799-MDG, ECF Doc. No. 19 (E.D.N.Y. January 25, 2016) (finding a one-third contingency fee appropriate for Eisner & Dictor, P.C. where the percentage was "somewhat higher" than the lodestar amount).

The lodestar cross-check therefore confirms the reasonableness of the requested fee award. Plaintiffs' Counsel spent over 753.8 hours litigating and settling this matter. Dictor Decl. ¶ 78. The time spent by Plaintiffs' Counsel is described in Plaintiffs' Counsel's declarations and

---

[11] Counsel maintained contemporaneous time records throughout their investigation and litigation. Dictor Decl. ¶ 78. For the Court's convenience, Counsel have submitted a summary of those voluminous records as Dictor Decl., Exhibit 5. At the Court's request, Eisner & Dictor P.C. and Roger Bernstein will provide the actual time records and would seek to do so through *in camera* review.

summaries of time records. *See* Dictor Decl. ¶ 78. This total is under-inclusive. Eisner & Dictor

P.C. proactively omitted the time of any attorney or support staff at the firm who worked for less

than five hours on this case. Dictor Decl. ¶ 78. The hours worked by Plaintiffs' Counsel result in

a lodestar of approximately of $290,880. Dictor Decl. ¶ 80.

### 1. Plaintiffs' Counsel's Rates are Reasonable Market Rates.

The rates used in calculating Plaintiffs' Counsel's lodestar are consistent with rates used

by courts in this district in wage and hour litigation. *See Scott v. City of New York*, 643 F.3d 56,

59 (2d Cir. 2011) (holding that rate of $550 per hour in FLSA case was reasonable); *Mei Na Lao*

*v. Chung Chou City, LLC*, No. 16-CV-9193 (AJN), 2018 WL 2170298, at *2 (S.D.N.Y. May 10,

2018) (awarding an hourly rate of 400/hr. for a senior partner; $325/hr. for a senior associate;

$350/hr. for a senior partner; and $125/hr. for a paralegal); *Raniere v. Citigroup Inc.*, 310 F.R.D.

211, 221 (S.D.N.Y. 2015) (applying hourly rates of $650-950 per hour for partners, $350-600 per

hour for associates, and $180 per hour for staff and paralegals for purposes of lodestar

crosscheck in granting requested fee of one-third of the settlement fund in wage and hour

action); *Saunders v. City of N.Y.,* 07 Civ. 830, 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009)

(awarding partners with "substantial experience litigating employment matters" $425 per hour

and associates between $200 and $300 per hour). Moreover, courts in this District have approved

Eisner & Dictor rates in individual and multi-plaintiff wage and hour litigation for the purposes

of a crosscheck in FLSA settlements which must be judicially reviewed pursuant to *Cheeks v.*

*Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). *See Redzepagic v. Hammer*, No. 14

CIV. 9808 (ER), 2017 WL 1951865, at *2 n.2 (S.D.N.Y. May 8, 2017) (approving Eisner &

Dictor's lodestar rates of $500 an hour for the senior partner, $250 an hour for associate

attorneys, and $125 an hour for legal staff).[12]

### F. Plaintiffs' Counsel Are Entitled to Reimbursement of Expenses Under the Settlement Agreement.

Plaintiffs' Counsel request reimbursement of $5,597.61 in out-of-pocket expenses to be

paid from the Settlement Fund. "Courts typically allow counsel to recover their reasonable out-

of-pocket expenses." *Khait*, 2010 WL 2025106, at *9; *see also In re Indep. Energy HoldingsPLC*

*Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for

reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as

they were incidental and necessary to the representation of those clients.") (internal quotation

marks and citation omitted). Here, Plaintiffs' Counsel's actual expenses of $5,597.61 were

incidental and necessary to the representation of the Class Members. Dictor Decl. ¶ 87.

Plaintiffs' Counsel have limited the expenses for which reimbursement is sought to the filing fee,

Plaintiffs' share of the mediator's fee, and process server fees. Dictor Decl., ¶ 87, Ex. 5,

Significantly, Plaintiffs' Counsel have agreed to pay the fees of the Settlement Administrator out

of counsel's award of attorneys' fees.  Dictor Decl., ¶ 32, 87.

### G. The Requested Service Awards Are Reasonable and Should Be Approved.

The Service Awards that Plaintiffs request are reasonable given the significant

contributions they made to advance the prosecution and resolution of the lawsuit. Courts

acknowledge that representative plaintiffs play a crucial role in bringing justice to those who

would otherwise be hidden from judicial scrutiny, including low-wage workers. *See, e.g., Velez*

*v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25,

2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the

---

[12] The rates used in the lodestar "cross-check" are provided in Exhibit 5.

defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (internal citation omitted). These awards are common in class action cases—including wage and hour class actions—because they "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) (citation omitted).

Both this Court and courts in this Circuit routinely grant service awards in wage and hour class and collective actions. *See e.g.*, *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134, at *11 (S.D.N.Y. Sept. 23, 2014) (approving service awards of $12,500 each to named plaintiffs and $4,000 to opt-in plaintiffs); *Yuzary*, 2013 WL 5492998, at *12 (approving service awards of $10,000 to each of the nine named plaintiffs); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) (approving service awards of $7,500 and $5,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving awards of $15,000 and $10,000 to named plaintiffs).

In examining the reasonableness of a requested service award, courts consider: (1) the personal risk incurred by the plaintiffs; (2) the time and effort expended by the plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *Frank*, 228 F.R.D. at 187 (noting numerous cases that rely on these factors).

**1. Plaintiffs Assumed Significant Risks.**

Courts consider the risks assumed in serving the interests of the class when considering the reasonableness of service awards. *See id* (noting that named plaintiffs in employment cases face adverse employment opportunities while also serving as the primary source of information regarding any asserted claims); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ.

7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) (noting these awards serve "the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts"). In the instant matter, the Plaintiffs agreed to serve as Class Representatives after experiencing retaliatory job terminations by the employer for which they had to pursue ULP charges at the NLRB. Even if there is no record of retaliation, courts recognize that the plaintiffs assume the risk of retaliation on behalf of the entire class. *See Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *10 (noting the inherent danger of adverse actions in employment contexts); *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) (noting that named plaintiffs merit recognition for assuming the risk of retaliation even when "there is not a record of actual retaliation, notoriety, or personal difficulties"). Here, the Plaintiffs' assumption of demonstrated retaliation risks strongly supports the requested service award.

### 2. The Class Representatives Expended Significant Time and Effort.

These Class Representatives undertook significant work on behalf of the class. Courts recognize the important factual knowledge that plaintiffs bring to employment class actions, including information about employer policies and practices that affect wages. See *Parker*, 2010 WL 532960, at *1 (noting the effort that named plaintiffs made contributed to the litigation on behalf of the entire class). As discussed above, the Class Representatives contributed significant time and efforts to the case by providing Class Counsel with detailed factual information and documents regarding their job duties, Defendants' policies, and other information relevant to their claims, and by regularly making themselves available to communicate with Class Counsel when necessary. Dictor Decl. ¶ 90. Named Plaintiffs also participated in the parties' mediation. Dictor Decl. ¶ 25. This time and effort also support the requested Service Awards. *See Palacio v. E*Trade Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, at *7 (S.D.N.Y. June 22, 2012)

(approving awards over $3,000 each to named and opt-in plaintiffs "for the time and effort expended in assisting the prosecution of the litigation, [and] the risks incurred by becoming and continuing as a litigant"); *Sewell*, 2012 WL 1320124, at *15 (granting service awards of $15,000 and 10,000 to named plaintiffs who "provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel").

### 3.   The Ultimate Recovery Supports the Requested Service Awards.

The requested Service Awards amount to less than 0.8% of the total recovery, which is a reasonable percentage. *See e.g.*, *Johnson v. Brennan*, No. 10 Civ. 4712(CM)., 2011 WL 4357376, at *2, *21 (S.D.N.Y. 2011) (awarding incentive payments totaling 9.1% of $440,000 FLSA/NYLL settlement); *Parker*, 2010 WL 532960, at *2 (finding a service awards totaling 11% of the total recovery reasonable given that the awards did not prevent other class members from receiving "significant financial awards"); *Frank*, 228 F.R.D. at 187 (approving award of approximately 8.4% of the settlement). Furthermore, the reward requested is well below other rewards this Court has granted. *See Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *10-11 (S.D.N.Y. Jan. 29, 2014) (approving service awards of $25,000 in wage and hour class action); *Beckman*, 293 F.R.D. at 483 (approving service awards of $7,500 and $5,000 in wage and class action); *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (approving service awards of $15,000 each in wage and hour class action).

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the Rule 23 Class and approve the FLSA Collective Class; (2) grant final approval of the Settlement Agreement; (3) grant attorneys' fees of $435,000 and grant attorneys' costs and

expenses of $5,597.61; and (4) grant Service Awards of $5,000 each to Plaintiffs Kevin Ray,

Brian Esposito, Samuel Ladd, and Jenna Miller

Dated:  February 3, 2021
        New York, NY                          Respectfully submitted,

                                         EISNER & DICTOR, P.C.

                                         Benjamin N. Dictor
                                         39 Broadway, Suite 1540
                                         New York, NY 10006
                                         (212) 473-8700
                                         ben@eisnerdictor.com

                                         ROGER J. BERNSTEIN
                                         535 Fifth Avenue, 23rd Floor
                                         New York, NY 10017
                                         (212) 748-5800
                                         rbernstein@rjblaw.com

                                         *Counsel for Plaintiffs and Class Members*